828 So.2d 1094 (2002)
Michael Lyndal CUROLE
v.
Grace Yin-Yee Wong CUROLE.
No. 2002-C-1891.
Supreme Court of Louisiana.
October 15, 2002.
Lee W. Rand, Bennett Wolff, for Applicant.
Lila M. Samuel, for Respondent.
KIMBALL, Justice.
The issue presented to this Court is whether the trial court abused its discretion in denying a custodial parent's request for relocation to Cleveland, Ohio. After applying the statutory criteria listed in R.S. 9:355.12, the trial court determined that the mover did not meet her burden of proving the proposed relocation would be in the best interest of the children. The court of appeal then reversed the trial court's judgment, concluding that the trial court abused its discretion and that the evidence and testimony support a finding that relocation would be in the children's best interest. Upon review, we find the record reflects that the trial court properly considered all of the factors mandated by La. R.S. 9:355.12 and reasonably concluded, *1095 based on a totality of the circumstances, that relocation would not be in the children's best interest. We therefore reverse the judgment of the court of appeal and reinstate the trial court's judgment.

FACTS AND PROCEDURAL HISTORY
G.C. and M.C. are the parents of two children, N.C. and E.C.[1] At the time of the proceeding in question, N.C. was six years old and E.C. was two years old. The parents were divorced in March 2001. G.C. and M.C.'s relationship has always been filled with conflict and occasionally involved physical altercations.
While G.C. has always been the primary caretaker, both G.C. and M.C. have been actively involved in parenting their children. By a consent judgment, they share joint custody, and G.C. is the domiciliary parent. M.C. is entitled to visitation with the children every weekend and alternating Fridays. M.C. has consistently exercised his visitation.
In October of 2000, G.C. notified M.C. that she wished to relocate with the children to Cleveland, Ohio. M.C. filed a timely objection to the relocation of the children.
G.C. desires to relocate to the Cleveland area, to participate in a business financed by her brother-in-law, the husband of G.C.'s sister. The business entails an importation of high-end Italian furniture to be sold in the Cleveland area, as well as over the Internet. G.C. would have an equity interest in the business and would earn a salary of $50,000 per year plus benefits. G.C. and the two children would initially live with G.C.'s sister and brother-in-law, who own a large home in an affluent area. G.C. presented evidence showing that the area has excellent schools, medical facilities, and so forth. G.C. stated the reasons she wishes to move are that the relocation to Cleveland will provide a better environment for the children, will give her an opportunity to start over, and will allow her to escape the strain of her relationship with M.C. G.C. denied that the relocation was an attempt to remove her children from contact with their father.
Prior to the hearing on the proposed relocation, M.C. began to have problems getting N.C. to come with him for visitation. M.C. believed that G.C. was encouraging N.C. to resist visitation. G.C., on the other hand, contended that it was M.C.'s conduct that caused N.C. to resist visitation. On one occasion, N.C. resisted leaving with her father so fervently, M.C. decided to call the police to assist him in enforcing his visitation. The officer who arrived refused to take any action because he found no violation of the law.
After hearing evidence on the proposed relocation, the trial court concluded that relocation is not in the children's best interest and thereby denied the relocation request. The trial court found that G.C. met her burden of proving that her relocation request was made in good faith. However, after considering each factor enunciated in La. R.S. 9:355.12, the trial court concluded that the proposed relocation would not be in the best interest of the children. The trial court therefore denied the proposed relocation.
*1096 The court of appeal reversed the trial court's judgment, concluding the trial court clearly abused its discretion by giving weight to Dr. Parker's recommendation, which was non-specific to the parties and based on general theories, over Dr. Van Beyer's recommendation, which was specific to the parties in this case and based on a direct evaluation of them. Curole v. Curole, 02-153 (La.App. 5 Cir. 6/26/02), ___ So.2d ___, 2002 WL 1378874. The intermediate appellate court concluded the evidence and testimony supported a finding that the relocation would be in the children's best interest. The court of appeal further found that relocation would reduce the friction and conflict between the parties, while the children would continue to have frequent and extensive visitation with their father. Thus, finding error in the trial court's judgment, the court of appeal reversed and granted the relocation request.
We granted certiorari to consider the correctness of the court of appeal's judgment. Curole v. Curole, 02-1891 (La.7/29/02), 821 So.2d 487.

LAW AND DISCUSSION
As in judicial determinations involving children in the context of divorce, adoption, and termination of parental rights, Louisiana's relocation statutes retain the "best interest of the child" standard as the fundamental principle governing decisions made pursuant to its provisions. A trial court's determination in a relocation matter is entitled to great weight and will not be overturned an appeal absent a clear showing of abuse of discretion.
Louisiana's relocation statutes are based on the American Academy of Matrimonial Lawyers Model Relocation Act. Edwin J. Terry, Kristin K. Proctor, P. Caren Phelan, & Jenny Womack, "Relocation: Moving Forward, or Moving Backward?" 15 Journal of the American Academy of Matrimonial Lawyers 167, 225 (1998). These statutes, La. R.S. 9:355.1-9:355.17, govern the relocation of a child's principal residence to a location outside the state, or, if there is no court order awarding custody, more than 150 miles within the state from the other parent, or, if there is a court order awarding custody, more than 150 miles from the domicile of the primary custodian at the time the custody decree was rendered. Pursuant to these statutory provisions, the parent wishing to change the principal residence of the child must notify the other parent of the proposed relocation by registered or certified mail within a certain time period specified in La. R.S. 9:355.4. The primary custodian of the child or a parent who has equal physical custody may relocate the principal residence of the child after providing the required notice unless the parent entitled to notice initiates a proceeding seeking a temporary or permanent order to prevent the relocation within twenty days after the receipt of the notice. La. R.S. 9:355.7.
Pursuant to La. R.S. 9:355.13, the relocating parent has the burden of proving that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the child. In deciding to adopt this burden of proof, our legislature chose the most conservative option in the Model Act. See Terry et al., supra, at 225. Because of serious disagreement on the issue, the drafters of the Model Act could not reach a consensus regarding the appropriate burden of proof to be imposed in relocation cases. Therefore, instead of recommending one burden, the drafters proposed three alternatives and left this issue for each legislature to determine for itself. See Model Relocation Act, Comment to § 407. The alternatives presented in the Model Act were: (Alternative A) "The relocating person has the burden of *1097 proof that the proposed relocation is made in good faith and in the best interest of the child."; (Alternative B) "The non-relocating person has the burden of proof that the objection to the proposed relocation is made in good faith and that relocation is not in the best interest of the child."; or (Alternative C) "The relocating person has the burden of proof that the proposed relocation is made in good faith. If that burden of proof is met, the burden shifts to the non-relocating person to show the proposed relocation is not in the best interest of the child." Model Relocation Act, § 407. By choosing to adopt Alternative A and refusing to place on the parent opposing relocation the burden of proving the proposed relocation is not in the best interest of the child, our legislature made a policy determination that relocation is not to be automatically considered as being in the best interest of the child. Instead, the parent seeking to relocate the principal residence of the child is required not only to prove that the request for relocation was made in good faith, but also that the relocation is in the best interest of the child. Thus, the legislature has placed upon the parent seeking relocation a two-part burden: (1) that the proposed relocation is made in good faith; and (2) that the proposed relocation is in the best interest of the child.
La. R.S. 9:355.12 sets forth eight factors the court must consider in determining whether the proposed relocation is in the best interest of the child. The factors set forth in the statute are as follows:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or education opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
This statute mandates that all of the factors set forth be considered by the court. It does not, however, direct the court to give preferential consideration to certain factors.
In the instant case, the trial court first determined that G.C. sought the proposed relocation in good faith. In making this finding, the court noted concerns regarding the permanence of G.C.'s employment in Ohio, her long-term residence, and the fact that it appeared her desire to relocate stemmed, at least in part, from a desire to distance herself from M.C. Nevertheless the court concluded the proposed relocation was made in good faith. After a review of the record, we find the trial *1098 court's determination on this issue was not manifestly erroneous.
Turning to the issue of whether the proposed relocation was in the best interest of the children, the trial court considered each enumerated factor and determined that relocation would not be in their best interest. While noting the bias inherent in their testimony, the trial court found the testimony of the children's paternal grandparents and paternal uncle regarding M.C.'s care of and interaction with the children "extraordinarily sincere" and "very convincing." Additionally, the court was impressed with M.C.'s testimony and found he was sincere, loving with his children, and very concerned about losing contact with his children. It noted, however, M.C.'s temper and impetuousness, especially with young children, was troubling, but had improved significantly within the months preceding the hearing. Finally, the court was impressed with the involvement and loving relationship between the paternal grandparents and the children. In light of all these observations, the trial court found the relocation would negatively impact these close relationships in a way that would be neither fair nor beneficial to any of the parties. Therefore, considering the diminished relationships that would result, the court found the first factor weighed heavily against relocation.
The trial court next considered the testimony of Dr. Van Beyer, who was called as a witness by G.C. and had interviewed all the individuals involved in this case. Dr. Van Beyer testified that both children were observed to be comfortable with their father and that although N.C. was mildly oppositional, she has a positive loving relationship with her father. Her testimony also indicated that E.C.'s attachment to his father is "secure and unambivalent." Additionally, the trial court considered the testimony of Dr. Parker, a clinical psychologist, that the children of the ages of N.C. and E.C. should have frequent visits with both parents and that living away from their father will "almost certainly injure their relationship." The court indicated it gave considerable weight to Dr. Parker's assessment, which weighed against relocation, when examining the second factor.
Regarding the third factor, which deals with the feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, the court concluded that the chance of preserving the relationship between M.C. and the children was "remote" if the relocation was allowed. The court found that considering the costs of visitation with M.C. for the first year, which G.C. proposed to pay, and the parties' history of uncooperative visitation, visitation after the relocation "would [not] work." All the testimony indicated that the worst and more frequent problems between the parents occurred at the transition when M.C. picked up the children, especially N.C. The court found that because the exchange of the children was so emotionally traumatic for brief local visits, it was likely that such problems would escalate with relocation. The court additionally found Dr. Van Beyer's reasoning behind her recommendation to allow the relocation was faulty because the relocation would distance E.C., with whom there have never been visitation problems, from his father, because it is illogical to believe that if transitions for short-term visits are difficult and avoided, transitions for much longer visits would occur at all, and because the transition problems were caused, at least in part, by G.C. For example, the court noted G.C.'s own testimony that, prior to the time M.C. picks up N.C. for visits, she tells N.C. how terribly she will miss her and that she will cry while N.C. is with her father. The court found that *1099 G.C. "gently encourages" each transition to become an ordeal. Further, it found that M.C. credibly testified that once he has driven two blocks from G.C.'s home, all problems with N.C. cease. The grandparents corroborated M.C.'s testimony and stated that N.C. is a loving child with them except for those instances in which she is observed by G.C. The court concluded it was "absolutely clear" that N.C. is afraid that her mother will see her show any affection to M.C. or her paternal grandparents. The court determined that G.C.'s influence is the direct cause of the transition problems.
Considering all the above testimony and findings, the trial court concluded that the visitation plan upon relocation, which involves numerous flights between Cleveland and Metairie, is impractical and unworkable for these parents. Furthermore, both Dr. Van Beyer and Dr. Parker opined it was neither feasible nor desirable for M.C. to travel to Cleveland to visit the children because the visits would be brief and artificially conducted in a hotel room. Finally, the court concluded, once the children establish social ties in the new community, they will become increasingly reluctant to make their scheduled trips. As their weekends become more of a burden than a visit, M.C. will become less important and their relationship will diminish. With the above considerations, the court found that the difficulty of making long-distance transitions would certainly have an adverse impact on the preservation of the children's relationship with their father, weighing heavily against relocation.
The court did not make any findings pertinent to the fourth factor, which is the children's preferences, because it agreed with Dr. Van Beyer's assertion that the children are too young for their preferences to be considered.
In examining whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party, the court found G.C.'s previous actions militated against the relocation. The court found G.C. has exhibited a subtle course of conduct which, whether intentional or not, discourages the children's consistent and healthy visits with their father. The court found G.C.'s testimony that the children were too sick to visit with their father for over a month lacked credibility, because the children were able to attend school and went trick-or-treating for Halloween. Also, G.C. had removed the children from Louisiana on two occasions without consideration of their father's visitation rights. The court found this fact to weigh clearly and heavily against relocation.
The court next considered whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or education opportunity. The court was persuaded that relocation to Cleveland would enhance the quality of life for both G.C. and the children, offering a safer environment and better schools and recreation, but noted G.C. acknowledged she earned almost $50,000 as a flight attendant when she worked in Louisiana. However, the court found that when G.C. moves from her temporary residence with her sister and brother-in-law, her expenses will increase and her $50,000 annual salary will be required to cover more necessities. Thus, it determined G.C.'s quality of life in Cleveland may not be significantly better than it is in Metairie. Nonetheless, the court resolved this factor in favor of relocation.
In considering the reasons of each parent for seeking or opposing the relocation, the court found that G.C.'s primary reason for wanting to move is to avail herself of a *1100 promising, although uncertain, business opportunity. It determined she justifiably wants her children to live in an apparently upscale community; however, her intent is to make her residence at her brother-in-law and sister's home temporary, so there is no reason to believe her eventual permanent residence will be so significantly better than in Metairie as to justify relocation away from their father. The court found M.C.'s reasons for opposing the move are that he does not want to lose frequent contact with his children and he fears alienation from them. The court also found that based on recent experience, M.C. legitimately fears that typical repetitive obstacles and excuses will occur. Furthermore, the court believed that it would be a tragic waste to sacrifice a loving and beneficial relationship the children have with their paternal grandparents. The court concluded that the benefits of relocation do not justify the gradual alienation that would occur between M.C. and his children. Moreover, the court stated it was convinced that the relocation would lead to the nearly complete deterioration of M.C.'s close relationship with E.C. and of a potentially close relationship with N.C. Finally, the court found that although there are significant immediate benefits to moving, these benefits are outweighed by the long-term detrimental effects on the relationship between the children and their father. Thus, the court determined this factor weighed against relocation.
Finally, in considering any other factors affecting the best interest of the child, the court stated it was impressed with the testimony and credentials of Dr. Parker on the harmful effects of relocation and the distancing of one parent from the children. Although Dr. Parker did not interview G.C. or the children, she characterized the move as bad for the children's relationship with the non-custodial parent. She testified emphatically that, in her opinion, the relocation would be unhealthy for the children and the conflict would not be resolved by a move. Dr. Parker further testified that M.C. fears he could lose contact with the children after they move and the court found it was "obvious" during M.C.'s testimony that he loves his children and is terribly afraid of losing contact with them. The court found that both M.C. and G.C. have tempers, but that M.C.'s had recently improved. Finally, the court detailed a tape-recorded telephone call from M.C. to G.C. that occurred several hours after M.C. called the police to get N.C. into his car. The court stated that during the call M.C. pleaded with G.C. to change the method of exchanging the children, but G.C. refused to listen, coldly disregarded his pleas, and hung up on him. The court stated it found this incident "barely relevant," but seriously questions the assessment of G.C. and Dr. Van Beyer that this tape showed M.C. bullying G.C.
In conclusion, the court found G.C. to be a wonderful mother, and did not doubt that the community to which she wishes to relocate will be, at least initially, superior. However, it found that such a consideration was only one of many factors. Although it found benefits to the proposed relocation, the court found that the application of the factors led it to the conclusion that relocation is not in the children's best interest and must therefore be denied.
Based on a thorough reading of the record in this case, we cannot say that the trial court was manifestly erroneous in its decision to deny relocation. The trial court properly considered each of the factors listed in La. R.S. 9:355.12 and found the proposed relocation was not in the best interest of the children. The record reveals that the court was presented with much conflicting testimony and it painstakingly recounted the testimony to make credibility determinations and reasonable conclusions about the effects of the relocation on the lives of the children before it.
*1101 It is obvious that the court had doubts about G.C.'s stability and credibility and found that she would not foster a loving relationship between her children and their father after she relocated. We cannot say this determination was manifestly erroneous.
The appellate court concluded that the trial court abused its discretion by weighing Dr. Parker's recommendation, which was non-specific to the parties and based only on general theories, over Dr. Van Beyer's recommendation, which was specific to the parties in this case and based on direct evaluation of them. This conclusion, however, is not supported by a thorough reading of the record. A trial court may give whatever weight it deems appropriate to the testimony of any and all witnesses, including that of experts. In this case, the record reveals the trial court did not rely exclusively on Dr. Parker's testimony, but based its conclusion on the totality of the circumstances. Additionally, the trial court agreed with some of Dr. Van Beyer's recommendations and articulated specific reasons in those instances where he did not find her reasoning persuasive. Accordingly, we find the court of appeal incorrectly determined that the trial court erred in failing to give weight to Dr. Van Beyer's testimony.
For the above reasons, we conclude the trial court did not abuse its discretion in finding that the relocation would not be in the children's best interest. The court of appeal's judgment is therefore reversed and the judgment of the trial court is hereby reinstated.
REVERSED. JUDGMENT OF THE TRIAL COURT REINSTATED.
JOHNSON, J., dissents.
NOTES
[1] Supreme Court Rule XXXII, § 3 provides: "The identity of all minor children subject to any and all proceedings in this court, whether civil, criminal or otherwise, shall remain confidential in all briefs filed and all opinions rendered." In accordance with this mandate, we have used the initials of the persons involved in this matter to protect the identity of the minor children. However, because of the way in which this case originated, the caption bears the names of the parents, thereby making our efforts to protect the child practically futile. See Billiot v. Billiot, 01-1298, p. 1 n. 1 (La. 1/25/02), 805 So.2d 1170, 1172 n. 1.