VICTORY, J.
hWe granted this writ application to determine the appropriate standard of review of a trial court’s decision in a child relocation case, where the trial court does not expressly analyze each factor under La. R.S. 9:355.12 in determining whether relocation is in the best interest of the child. After review of the record and the applicable law, we find that while La. R.S. 9:355.12 mandates that the trial court consider all twelve factors listed in La. R.S. 9:355.12, its failure to expressly analyze each factor in its written or oral reasons does not constitute an error of law such that de novo review is appropriate. Where the trial court has considered the factors listed under La. R.S. 9:355.12 in determining whether relocation is in the best interest of the child or children, this determination is reviewed for abuse of discretion. In this case, the court of appeal erred in reviewing the case de novo. Utilizing the correct standard, we see no abuse of discretion in the trial court’s decision to deny the mother’s relocation request. Therefore, we reverse the judgment of the court of appeal and reinstate the trial court’s judgment denying relocation.
FACTS AND PROCEDURAL HISTORY
Robert Gathen (“Robert”) and Vanessa K. Gathen (“Vanessa”) met in the state of Washington while Robert was serving in the U.S. Navy. On January 6, | ¾1996, they were married in California where their first child, Andru, was born on August 3, 1997. Shortly thereafter, they moved to Thibodaux, Louisiana, where Robert’s family resided. Their second child, Evan, was born there on March 3, 2002. On August 5, 2005, Robert filed a petition for divorce and on October 11, 2005, a consent judgment awarded joint custody of the children with Vanessa designated as the domiciliary parent subject to Robert’s reasonable visitation. A joint implementation plan detailing the custodial arrangements was never filed. Vanessa was awarded monthly child support of $1,320.00 and was granted possession and use of the family home with Robert paying the house note.
On January 18, 2006, Vanessa notified Robert of her desire to relocate with the children to Puyallup, Washington. Robert objected and the trial court denied her relocation request in March of 2006.[1] *4 Vanessa did not appeal that | Judgment. The parties were divorced on April 17, 2006. On November 20, 2006, the parties executed a community property partition agreement in which they stipulated they were equally responsible for the monthly payments of the first and second mortgage notes that were secured by the family home. The parties agreed that Robert would deduct Vanessa’s share of these payments from the child support payments and pay the remainder to Vanessa. The parties agreed not to partition the family home until Vanessa could secure another suitable residence.
In March 2009, Vanessa told Robert that she intended to relocate with the children to Puyallup, Washington, and Robert initially acquiesced. However, after Vanessa filed the required written notice on March 25, 2009, Robert filed an objection to the relocation on April 24, 2009. Subsequently, on May 22, 2009, Vanessa filed a rule seeking past-due child support in the amount of $14,900.00, an income assignment, a contempt of court ruling against Robert, attorney fees, and costs.
The trial court considered the relocation request on June 30, August 6, and August 21, 2009. The evidence presented showed that Vanessa had been the primary caregiver, and that Robert worked offshore every other seven days and had physical custody of the boys twice a month for a weekend. Vanessa testified that she lived in the state of Washington with her parents from first grade until fifth grade, returned for her sophomore year of high school to live with her sister, and returned there after high school graduation, from 1993-1995, at which time she moved with Robert to San Diego. She testified that one reason she wanted to return to Washington was to be with her family, which includes her sister and two |fichildren, and her aunt. Her mother lives in Hawaii to care for her aging grandmother, but visits Washington often and plans to relocate there. Vanessa planned to live with the boys in the bottom floor of her sister’s house rent-free, which includes a living area, two bedrooms, and a full bath. In addition, the oldest child was becoming too old for after-school care, and in Washington, her aunt and sister could pick the children up after school and help her with day care until she finished work. Vanessa presented evidence that she made $10.17 per hour working as an administrative assistant for Nicholls State University, but because of budget cuts she would not receive a merit pay increase, and, Nicholls was instituting a 6 and ½ day furlough, which would decrease her annual income. She testified that a friend in Washington had offered her a job with an orthodontic lab for $15.00 per hour, which would require her to perform the same general duties she performs at Nicholls, and work with study models for various orthodontic offices in the area. Because she would be living rent-free and have an increased salary, she would be much better able to provide for her children. Vanessa testified she has no support system in Louisiana and wants to return to Washington to be with her family and to have her sons be with her family.
Robert argued that the requested relocation is for essentially the same reasons as the 2006 relocation request which was denied, except that now she has been offered a job that pays more money. He testified that his sons have lived their entire lives in Thibodaux, that they have a strong connection to his family, their *5 friends and their school. He testified that the great distance between Louisiana and Washington would greatly diminish the children’s relationship with him and his family.
After hearing the testimony, the judge denied the relocation request with the following oral reasons:
|fiThe evidence establishes that the mother, Ms. Gathen, desires to relocate to the State of Washington for numerous reasons which include she has been offered employment at an orthodontic lab with an increase in income. Her current employer Nicholls State University is scheduled to impose a six and one-half day furlough without pay due to budget cuts, which would result in a reduction in her income. Her employer, Nicholls State University is also scheduled to impose a freeze regarding merit pay increases.
Also, Ms. Gathen has testified that her relocation to the State of Washington would economically benefit her. She would be relieved of the necessity to pay day care expenses because her sister residing in Washington is a homeowner.
Ms. Gathen has also testified that the child Andrew [sic] can no longer attend day care. And there, is the potential that there would be a period of time after school when there would be difficulty in providing adequate supervision.
Also, Ms. Gathen has testified that initially should she relocate to the State of Washington, she would live with her sister. She testified that she was raised in the State of Washington and that she has lived with her sister in Washington at time periods in the past.
She has also stated that a consideration for her desire to relocate to the State of Washington is that she would live closer to her mother, who is a resident of Hawaii.
Mr. Gathen opposes the relocation to the State of Washington. He has provided proof that the children have resided predominantly within the State of Louisiana and within the Parish of La-fourche. The child Evan has lived his entire life within the State of Louisiana and the child Andrew [sic] has lived more than ten years of his life within the State of Louisiana.
The evidence proves that the children have attended all of their time in school in Lafourche Parish. Andrew [sic] has attended school for six years now and Evan has now attended pre-K and kindergarten.
Mr. Gathen has testified that he has a close — that the children have a close relationship with his mother and his aunts and that testimony has been supported by the testimony of his mother and aunt. .
Mr. Gathen also submits that the relocation would significantly limit the children’s contact with their father and the father’s family.
Mr. Gathen also argues or has presented evidence that the children have had a limited relationship with the aunt who lives in the State of Washington. The evidence presented is that this aunt has visited the State of Louisiana approximately two times and that the children and Ms. Gathen visit with the aunt in Washington approximately one time each year during the Christmas break.
17This evidence which has been presented to the Court causes the Court to determine that the relocation of the children to the State of Louisiana would have a significant adverse effect on the children. A relocation to the State of Washington would result in a change of the schools that the children have attended. Andrew [sic] has attended *6 school for a period of six years and Evan has attended pre-K and kindergarten.
Also, a relocation to the State of Washington would remove Andrew [sic] from the friends that he has enjoyed while living here in the State of Louisiana.
A relocation to the State of Washington would limit the children’s contact and, therefore, limit their relationship with their father due to the great distance between the State of Louisiana and the State of Washington. The relocation to the State of Washington would also limit the contact and, therefore, significantly limit the relationship the children have with their paternal grandmother and paternal aunts, again, due to the significant distance between the State of Louisiana and the State of Washington. And the evidence proves that the children have a limited relationship with the maternal aunt who they would reside with in the State of Washington.
Although the child has indicated a preference to live in the State of Washington, the Court will not give any significant weight to the determination of an eleven year old child as to what is in his best interest.
There is no competent evidence before the Court that the educational opportunities in the State of Washington are any greater than the educational opportunities available to the children in the State of Louisiana.
It is for these reasons that the Court will deny the intended relocation of the minor children to the State of Washington.
With two judges dissenting, a five-judge panel of the First Circuit Court of Appeal reversed, finding that a de novo review of the record was necessary because the trial judge “did not articulate its best-interest determination utilizing each of the statutorily-required factors set forth in La. R.S. 9:355.12, factor by factor.” Gathen v. Gathen, 10-0439, p. 7, 46 So.3d 283, 2010 WL 4151880 (La.App. 1 Cir. 9/15/10) (unpublished). Utilizing a de novo standard of review, the court of appeal allowed relocation finding that “factors 2, 3, 5, 6, 8 and 11 weigh in favor of Vanessa and the remaining factors favor neither party.” Id. at p. 16. Further, even under the | ^manifest error standard of review, the court of appeal found the trial court abused its discretion in denying relocation because “mindful of the express statements about the evidence relative to the statutory factors, we cannot say that the evidence as a whole preponderated in favor of the reasonableness of the trial court’s decision.” Id. at p. 17. We granted Robert’s writ application to determine whether La. R.S. 9:355.12 requires that a trial court expressly analyze each of the listed factors in oral or written reasons in making a relocation determination; and, if it does not, to determine the appropriate standard of review. Gathen v. Gathen, 10-2312, 49 So.3d 875, 2010 WL 4940049 (La.11/12/10).
DISCUSSION
A divorced parent seeking to relocate with his or her children to another state bears the following burden of proof:
The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. In determining the child’s best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life.
La. R.S. 9:355.13. In determining the best interest of the children, La. R.S. 9:355.12 lists the following factors to be considered:
*7 A. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelo-eating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
|fl(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
(10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
B. The court may not consider whether or not the person seeking relocation of the child will relocate without the child if relocation is denied or whether or not the person opposing relocation will also relocate if relocation is allowed.
In Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094, we first discussed the burden of proof in a relocation case.[2] We stated that as in divorce, adoption, and termination of parental rights cases, “Louisiana’s relocation statutes retain the ‘best interest of the child’ standard as the fundamental principle governing decisions made pursuant to its provisions.” 828 So.2d at 1096. As explained, the relocation statutes govern the relocation of a child’s principal |inresidence to a location outside the state, or, if there is no court order awarding custody, more than 150 miles within the state from the other parent, or, if there is a court order awarding custody, more than 150 miles from the domicile of the primary custodian at the time the custody decree was rendered. Id. Pursuant to La. R.S. 9:355.13, the relocating parent has the burden of proving that the pro *8 posed relocation is: (1) made in good faith; and (2) in the best interest of the child. In determining the child’s best interest, the court must consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life. La. R.S. 9:355.13. In Curole, we explained that by placing this two-part burden on the relocating parent and placing no burden on the nonrelocating parent, the legislature chose to assign a very heavy burden to the relocating parent to prove that relocation is in the best interest of the child.[3] Curole, supra at 1097.
After listing the factors provided in La. R.S. 9:355.12, we stated “[t]his statute mandates that all of the factors set forth be considered by the court.” Id. at 1097. “It does not, however, direct the court to give preferential consideration to certain factors.” Id. Finally, Curóle set forth the appropriate standard of review as follows: “[a] trial court’s determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion.” Id. at 1096.[4]
*9 In Courts of appeal have differed somewhat on Curóle’s meaning. In H.S.C. v. C.E.C., 05-1490 (La.App. 4 Cir. 11/8/06), 944 So.2d 738, the Fourth Circuit held that where the record does not support a finding that the trial court actually considered each separate factor of La. R.S. 9:355.12, de novo review, rather than reversal, was the appropriate remedy. However, proof that the trial court actually considered each factor “might be adduced from other than a rigid formulaic factor by factor analysis by the trial court....” Cf. McLain v. McLain, 07-0752 (La.App. 4 Cir. 12/12/07), 974 So.2d 726, 736 (statute does not require that judge must expressly analyze each factor). The Fifth Circuit has also held that where the record does not support a finding that the trial court actually considered each 112factor, prejudicial legal error has occurred and the court of appeal may remedy the deficiency by de novo review of the record. Johnson v. Spurlock, 07-949 (La.App. 5 Cir. 5/27/08), 986 So.2d 724, 728, unit denied, 08-1400 (La.7/25/08), 986 So.2d 670. The Third Circuit has held that even where the written reasons only mention certain of the factors, “the trial court’s decision to emphasize only certain factors does not, in and of itself, constitute error.” Jarnagin v. Jamagin, 09-903 (La.App. 3 Cir. 12/9/09), 25 So.3d 1028, 1033; see also Miller v. Miller, 01-0356 (La.App. 3 Cir. 10/31/01), 799 So.2d 753. Lastly, in a case where the trial court only expressly considered certain factors, the Second Circuit applied the manifest error standard and held that the trial judge properly focused on the best interest of the children and conducted an “overall analysis” of the factors. Bingham v. Bingham, 44,292 (La.App. 2 Cir. 5/13/09), 12 So.3d 448, 452. One finding common to all these cases is that where it can be determined that the trial court considered the factors, de novo review is inappropriate.
Based on our review of the law, we find that the trial court is not required to expressly analyze each factor in its oral or written reasons for judgment in a relocation case. Not only does La. R.S. 9:355.12 not expressly require it, but a trial court is never required to give oral reasons and is not required to give written reasons for its “findings of fact and reasons for judgment” unless requested by a party in most types of non-jury cases. La. C.C.P. art. 1917. Had either party desired the trial court’s findings of fact and reasons to be in writing, they could have asked. Further, if the legislature had intended the trial court to expressly analyze each and every factor in either oral or written reasons, it could have provided so. Consequently, we find the trial court’s failure to expressly analyze each factor does not constitute an error of law that would allow de novo review. See Evans v. Lungrin, 97-541 (La.2/6/98), 708 So.2d 731, 735 (where one or |13more legal errors interdict the fact-finding process, if the record is complete the court of appeal must conduct a de novo review of the record). The appropriate standard of review, as stated in Curóle, is that the trial court’s relocation determination is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion.
*10 That being said, it is readily apparent that a trial court’s failure to expressly analyze each factor makes appellate review for abuse of discretion somewhat difficult. Most certainly an articulation of the trial court’s consideration of each of the factors would better facilitate appellate review. However, based on the reasons given, we can assume that the trial court discussed the factors it felt were decisive to the case, and did not discuss the factors that it believed were not as important and should not be given much weight. As La. R.S. 9:355:12 “does not ... direct the court to give preferential consideration to certain factors,” Curole, supra at 1097, the trial court is free to give whatever weight it deems appropriate to each of the factors. Thus, upon review, it is appropriate for a reviewing court to look to the reasons and factors the trial court did expressly take into account in reaching its ultimate determination, and, for the factors the trial court did not expressly discuss, it is appropriate for the reviewing court to determine whether the trial court’s failure to give weight to these factors led the court to abuse its discretion in reaching its ultimate determination on relocation. Our review follows.
As stated earlier, a relocating parent must prove that the move is in good faith and in the best interest of the child or children. La. R.S. 9:355.13. There is no dispute that Vanessa proved her proposed relocation was in good faith. She testified that she wished to move to Washington to be closer to her family and to pursue an employment opportunity and housing situation that would be beneficial to her. Although Robert claimed the move was not made in good faith in opposing 114the relocation, he presented no evidence that the relocation request was not made in good faith.
Secondly, the court must determine whether relocation would be in the best interest of the children considering the twelve factors enumerated in La. R.S. 9:355.12. In this case, it is significant that this same trial judge considered and denied a relocation request from Vanessa just three years earlier and most of the facts supporting the relocation were the same. Inevitably, the trial judge was cognizant of the considerations he made in 2006. Thus, regarding the facts that remain the same in 2006 and 2009, we will take into account the considerations he made in 2006 in reviewing his decision to deny relocation.
The first factor the court must consider is the nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the children’s lives. The trial judge was well aware of the custody arrangement between the parents and knew the mother was the primary caretaker. He found that the children’s involvement with their father’s relatives in Thibodaux was substantial, while their involvement with their mother’s relatives in Washington was “limited.”
The second factor is the age, developmental stage, needs, and likely impact the relocation would have on the child’s physical, educational, and emotional development, taking into account any special needs of the child. In his 2006 reasons, the trial judge considered that Andru had been attending school for three years, was doing well there and had developed a circle of friends at the school that would end if her were to relocate. In its 2009 reasons, he recognized that there would be a problem with daycare for Andru if they were to remain in Louisiana which would be solved by a move to Washington. How *11 ever, he also considered 11sthat Andru had attended school in Thibodaux for six years and Evan for two years and a move would result in a change in schools that the children have attended, which apparently he found would be detrimental, and Andru would be removed from his friends in Thi-bodaux. Finally, he found no evidence that the educational opportunities are better in Washington than they are in Thibo-daux.
Third, the court must consider the feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances. The trial judge found the move would “limit their relationship with their father due to the great distance between the State of Louisiana and the State of Washington.” In 2006, he also considered the fact that Vanessa was offering extensive summertime visitation for Robert, just as she is now, but found that the use of visitation to maintain Robert’s relationship with the children was not very feasible.
The fourth factor is the child’s preference, taking into consideration the age and maturity of the child. Although there was testimony that Andru wanted to move to Washington, the trial judge decided not to give “any significant weight to the determination of an eleven year old child as to what is in his best interest.” This was within his discretion.
Fifth, the court must consider whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party. The testimony was consistent that the mother was very accommodating to Robert regarding visitation and Robert never disputed this. In the 2006 oral reasons, the trial judge commended Vanessa for continuing to allow the children to attend gatherings with Robert’s family every Friday and Sunday even after they had separated.
hfiSixth, the court must consider whether the relocation will enhance the general quality of life for both the custodial parent seeking the relocation and the children, including but not limited to financial or emotional benefit or educational opportunity. While the trial judge did not find any emotional or educational benefit to the relocation, he recognized that she had been offered a job at a dental lab with an increase in income and that her current employer was scheduled to impose a work furlough and a pay increase freeze. He also recognized that she would be relieved of paying day care expenses. This is one significant situation that changed since 2006, when she did not have a firm job offer in Washington and the trial judge found their quality of life would be the same in both Washington and Louisiana. While the trial judge could have discussed the other ways in which Vanessa and the children would financially benefit from the move, i.e., she would no longer be paying a mortgage and thus would have the entire $1,320.00 for child support, the trial judge did recognize and consider that Vanessa and the children would financially benefit from the move.
Seventh, the court must consider the reasons of each parent for seeking or opposing the relocation. As stated earlier, the trial judge recognized Vanessa’s reasons early in the oral reasons, apparently in an effort to consider whether the relocation request was in good faith. The trial judge also considered that Robert opposed the relocation because it would limit his contact and his family’s contact with the children, and remove them from the community they have known all their lives.
*12 Eighth, the court must consider the current employment and economic circumstances of the each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation. The trial judge recognized the economic circumstances regarding Vanessa’s current |17employment, the increase in pay her new job would afford her, and the fact that she would no longer have to pay day care expenses. In fact, because Vanessa would not have to pay rent and would be making $5.00 more an hour, the proposed relocation was necessary to improve Vanessa’s economic circumstances. However, Curóle directs that the trial court is not to give preferential consideration to any one factor; therefore, even though we may have placed more emphasis on Vanessa’s economic situation, the trial court did not abuse its discretion by not giving it more weight.
Ninth, the court must consider the extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations. While the trial judge did not mention this factor in its oral reasons, Vanessa filed a rule seeking past-due child support payments, an income assignment, and a finding that Robert was in contempt of court for failure to pay child support. The trial judge issued judgments on both matters the same day, denying Vanessa’s relocation request, but finding Robert in contempt of court for failure to pay child support and ordering him to pay $14,900 in arrearages along with interest, court costs, and attorney’s fees. Thus, while the trial judge did not mention Robert’s failure to fulfill his financial obligations in his oral reasons at the relocation hearing, these matters were essentially heard together and the trial court had to have considered this factor in his relocation decision. Undoubtedly, this factor weighs against Robert, but does not mandate that relocation be approved.
The tenth factor is the feasibility of a relocation by the objecting parent. As stated earlier, the trial judge determined in 2006 that it was not practical for Robert to relocate to Washington, given his job in Louisiana that provides the necessary income for the family to maintain their lifestyle. Robert maintains the same job as hshe did in 2006, thus this factor has not changed and the trial court has considered it.
The eleventh factor is any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation. The trial judge did not make any determinations regarding this factor. The only evidence presented on this subject was Vanessa’s testimony that Robert told her he became intoxicated at a friend’s house after a family dinner and could not remember how he arrived home with the boys. While serious, this isolated incident does not constitute a “history or substance abuse or violence.”
The twelfth factor directs the court to consider any other factors affecting the best interest of the child. This catch-all provision basically supports the “best interest of the child” focus in relocation cases and allows the trial court to consider any other factor that affects the best interest of the child, even if not listed. Here, the trial judge did not expressly consider any other factors.
Based on a thorough review of the record, we cannot say that the trial judge abused his discretion in denying the relocation request. The trial judge expressly analyzed the factors he felt were most decisive, and ultimately determined, as he did in 2006, that relocation was not in the *13 best interest of the children. Nothing in the record or the trial judge’s reasons leads us to the conclusion that the trial judge abused its discretion in determining relocation would not be in the best interest of the children.
CONCLUSION
While La. R.S. 9:355.12 requires the trial court to consider twelve factors in determining whether a relocation is in the best interest of the child, the trial court is not required to expressly analyze each factor in its oral or written reasons and its 11flfailure to do so does not constitute an error of law allowing de novo review. Here, it can be gleaned from the record as a whole that the trial judge followed the law in reaching his ultimate determination, and his decision cannot be overturned because there was no abuse of discretion.
DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
JOHNSON, J., dissents and assigns reasons.
KNOLL, J., dissents with reasons.

. In oral reasons dated March 13, 2006, the trial court reasoned:
Louisiana Revised Statutes Title 9, Section 355.13 provides the burden of proof which Ms. Gathen must meet in order to relocate the children from the state of Louisiana to the state of Washington. That article provides as follows: The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child.
Ms. Gathen, the law provides that you have to prove those two factors. I believe that you’ve proven the first one, that your desire to relocate is made in good faith. You’ve testified that one of the reasons you want to move to the state of Washington is that you can enhance or improve your relationship with your only sister. Observing your testimony, I believe that your testimony was truthful that you do have a desire to have a closer relationship with your sister and you want your children to have a closer relationship with your sister.
Also, you testified that another reason you wish to move to Washington is that you wish to obtain an associate's degree as a dental hygienist. Although there are programs here in Louisiana which would allow you to become a dental hygienist, the program which is closest which was earlier in New Orleans and they currently relocated to Baton Rouge is a four year program, a bachelor's program. The only associate degree program is in Shreveport, a considerable distance from where you currently live. *3 Obtaining an associates degree as a dental hygienist would benefit yourself. It would also benefit your children. You'd have a greater ability to earn money to support yourself and the children. So, clearly your intention to relocate is made in good faith.
I then have to evaluate whether or not the relocation is in the best interest of the children and the statute further provides that in determining the child’s best interest the court shall consider the benefits which the child derived either directly or indirectly from the enhancement from the relocating parent's general quality of life. Based upon the evidence that’s been presented today, it appears that the quality of life both for yourself and for the children would be essentially the same either here in Thibo-daux or in the state of Washington. Both communities provide an excellent opportunity for the education of the children. Both communities provide the necessary infrastructure for your children to enjoy their recreational activities.
But there are other factors that the Court has to consider. The evidence clearly proves that the children have a very close and loving relationship with their father. The testimony proves that when he works a seven and seven work schedule and the very day that he returned from work he immediately goes to see his youngest child and would see the older child but for the fact that the child was in school. If the children were to relocate to the state of Washington this would significantly diminish the contact with their father and the contact with their father is very important to their development as young children.
Also, the evidence proves that both the children, Mr. Gathen and also yourself have benefitted for approximately eight years from the extended family that exists here in Louisiana. There’s a larger extended family here in Louisiana than there is in the state of Washington. Here they have the paternal grandmother and two paternal aunts who are very much involved in the lives of these children and have been very beneficial to you and your husband over these past eight years. It’s clear from this testimony that’s been presented that these children are very close to their extended family here in Louisiana. Every Friday and every Sunday there’s a family gathering. In fact, much to your credit, even after you and your husband separated you continued to allow the children to enjoy that contact on Fridays and Sundays with their father’s family. And I say that much to your credit. Most mothers would have stopped that to the detriment of their child. It is obvious to me that if the children were to relocate to the state of Washington this would significantly diminish their contact with the paternal extended family.
Also, Andrew has been attending St. Joseph for a minimum of three years, possibly longer. It was not clear from the evidence how many years he had been attending that school. In your testimony you acknowledged that this is a good school, that he has done well there. And although there wasn’t any direct evidence about the amount of friendships that have developed with other students while he is at this school, it would be obvious to me that he has developed a circle of friends at the school that he attends and that would end if he were to relocate to the state of Washington.
Your attorney has argued that the father could maintain his relationship with the children through visitation. In fact, he has argued that you appear to be prepared to offer extensive summertime visitation. But interaction with children is better when it’s on a continuing basis than just on a periodic basis. And clearly the distance between the state of Louisiana and the state of Washington will not make it very likely that Mr. Gathen will be able to visit on a regular basis during most of the year. So, the use of visitation to maintain this very, very close and very strong relationship between the father and children is not very feasible.
And although the attorneys have not brought this issue before the Court, it is one of the factors that I’m required to look at is whether or not it’s practical for Mr. Gathen to possibly relocate to the state of Washington. And from the evidence that's been presented, I don’t believe that that is practical. He has a job here in the state of Louisiana. It’s a very beneficial job to the family. It provides the necessary income for the family to maintain the lifestyle that the family has enjoyed over the last eight years. And if he were to relocate, it would result in him, Mr. Gathen, also having diminished contact with his family. And it is clear from the evidence that has been presented today that Mr. Gathen also has a very close and loving relationship with his mother, his aunts and the other members of his extended family.
Ms. Gathen, it is for these reasons that the Court will deny your request to relocate *4 the children to the state of Washington. Court costs of today's motion will be assessed to the defendant, Ms. Gathen.

. At the time of Curole, La. R.S. 9:355.12 contained only eight factors. While now La. R.S. 9:355.12 contains twelve factors, the holding of Curóle is unaffected.

. In Curole, the Court explained that in adopting the language of La. R.S. 9:355.13, the legislature was presented with three alternatives by the drafters of the Model Act regarding the burden of proof. The first placed the burden of proving good faith and best interest on the relocating parent, the second placed the burden of proving good faith and best interest on the nonrelocating parent, and the third placed the burden of proving good faith on the relocating parent and best interest on the nonrelocating parent. The legislature chose the first option. 828 So.2d at 1096-97.

. This Court has previously discussed the reasons for the abuse of discretion standard in child custody cases, stating:
Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse of discretion.
Fulco v. Fulco, 259 La. 1122, 1129, 254 So.2d 603, 605 (1971) (citing Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952)).
While Curóle stated that abuse of discretion was the correct standard of review in a relocation case, it interchangeably referred to the manifest error standard in parts of the opinion. This was not technically correct. In Cleeton v. Cleeton, 383 So.2d 1231, 1235 (La.1979) (on reh'g), we granted a rehearing in part to address an "important particular” overlooked by the Court on original hearing, which was that it erred in applying the manifest error standard. The Court explained that while the manifest error standard reverses "for error,” "[t]he better standard of review in custody matters gives the trial court decisions great weight, to be overturned only when there is a clear abuse of discretion.” 383 So.2d at 1235. See also Thompson v. Thompson, 532 So.2d 101 (La.1988) and Stephenson v. Stephenson, 404 So.2d 963 (La.1981) (both applying the abuse of discretion standard in child custody cases). Similarly, in Bergeron v. Bergeron, 492 So.2d 1193, 1197 (La.1986), we criticized an earlier Court’s characterization of manifest error and abuse of discretion as being "substantially similar,” see Bordelon v. Bordelon, 390 So.2d 1325, 1329 (La.1980), calling this treatment of the appropriate standard "equivocal.” In Berger-on, the Court conducted a very thorough analysis of whether the heavy burden of proof and abuse of discretion standard of review in child custody cases had been legislatively abrogated by the rejection of the maternal preference rule and found that they had been retained. The Court explained that the abuse of discretion standard "preserves the trial court’s determination of the child's best interest, except in case of an abuse of discretion.” 492 So.2d at 1196. Commentators have likewise distinguished the abuse of discretion standard as being a “a higher standard of deference” than the manifest error standard. *9 applicable to cases where “the substantive law vests a high degree of discretion in the trial judge.” Frank L. Maraist, Louisiana Civil Law Treatise: Civil Procedure, Volume I, § 14:14, p. 558 (2nd ed.2008). Relocation cases, like other cases involving determinations of the best interest of the child, are such cases where the trial court is vested with a high degree of discretion and, as stated in Curóle, where the abuse of discretion standard is appropriate. Thus, while the manifest error and abuse of discretion standards may be similar, it is the abuse of discretion standard that applies here and the phrase should not be used interchangeably with manifest error.