PER CURIAM.
|,In this child custody case, the father, Torin Michael Poe, appeals the trial court’s judgment allowing the mother, Ashley Danielle Stone, to relocate to Colorado with their minor son, Torin Walker Stone. We affirm.

FACTS AND PROCEDURAL HISTORY

Torin Walker Stone was born on February 15, 2011. At that time, the parties *1228 lived together; however, shortly thereafter, the parties separated. Thereafter, Mr. Poe filed a petition for custody. Ms. Stone filed an answer and reconventional demand, wherein she noted that she was considering a move to Colorado. The parties entered into a consent judgment, awarding Ms. Stone domiciliary custody and Mr. Poe visitation. Within the consent judgment, Ms. Stone reserved her right to seek judicial authorization to relocate with her minor child.
Ms. Stone mailed a notice of proposed relocation to Mr. Poe. In response, Mr. Poe filed an opposition. After a hearing, the trial court granted Ms. Stone authorization to relocate to Colorado, finding it in the best interest of the child. This appeal followed.

¡¡DISCUSSION

In his sole assignment of error, Mr. Poe asserts that the trial court committed manifest error when it found that the relocation to Colorado was in the child’s best interest.
A parent seeking to remove his or her child from the jurisdiction of the court has the burden of proving that the move is made in good faith, and it is in the child’s best interest. La. R.S. 9:355.10; Gathen v. Gathen, 10-2312, p. 9 (La.5/10/11), 66 So.3d 1, 7. In determining the child’s best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life. Id. (citation omitted). The district court is vested with great discretion in matters of child custody and visitation; its determination is entitled to great weight and will not be disturbed absent a clear showing of abuse of that discretion. Id., 10-2312, p. 9, 66 So.3d at 13.
In reaching its decision regarding a proposed relocation, La. R.S. 9:355.14 supplies twelve factors for the trial court’s consideration:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation [.-¡arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
*1229 (10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
The trial court is not required to expressly analyze each statutory relocation factor in its oral or written reasons for judgment in a relocation case. Gathen, 10-2312, p. 12, 66 So.3d at 9. See also Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094. A trial court’s failure to expressly analyze each factor does not constitute an error of law that would allow de novo review. Gathen, 10-2312, pp. 12-13, 66 So.3d at 9. The trial court is free to give whatever weight it deems appropriate to each of the statutory factors in a contested relocation case. Upon 14review, it is appropriate for a reviewing court to look to the reasons and factors the trial court did expressly take into account in reaching its ultimate determination. Gathen, 10-2312, p. 13, 66 So.3d at 10. For the factors the trial court did not expressly discuss, it is appropriate for the reviewing court to determine whether the trial court’s failure to give weight to those factors led the court to abuse its discretion in reaching its ultimate determination on relocation. Id.
Mr. Poe’s argument is two-fold: 1) Ms. Stone was not in good faith; and 2) it was not in the best interest of the child. Mr. Poe alleges that Ms. Stone’s decision was made in bad faith. He contends that she is not concerned about the son’s best interest, but wants to relocate for her own convenience. As a result of the relocation, Mr. Poe argues, his visitation will be drastically reduced.
During the hearing, Ms. Stone testified that she sought to relocate to be closer to her family, who would offer support for her and her child while she pursued advanced education. She further testified that while none of Ms. Stone’s relatives lived in Louisiana, Mr. Poe and his family did; however, they were minimally involved with the child. Ms. Stone .acknowledged that Mr. Poe would see their child between two and four times a week. However, she also stated that he often had to rearrange or cut short his visitation due to work. Ms. Stone was then left with the task of providing child care with no familial support.
Although the statute does not define what constitutes “good faith,” courts have found a party to be in good faith when he/she is seeking to relocate near their family while pursuing educational and employment opportunities. See Gathen, 10-2312, p. 13, 66 So.3d at 10; and Jarnagin v. Jarnagin, 09-903, pp. 7-8 (La.App. 3 Cir. 12/9/09), 25 So.3d 1028, 1033. These are the reasons established by Ms. Stone. Further, the record is void of any evidence to challenge Ms. Stone’s good faith in relocating.
Next, the defendant argues that the record does not support the finding that the relocation was in the best interest of the child.
Counsel for both parties alluded to the various factors governing relocation during the hearing. Upon review of the evidence, the trial court found that it was in the best interest of the child to relocate to Colorado with Ms. Stone, while maintaining as much visitation with Mr. Poe as possible. The trial court did not expressly articulate any of the factors on which it relied in reaching its decision. Thus, we will review each of the factors set forth in La. R.S. 9:355.14 in order to determine whether the trial court abused its discretion in finding that relocation to Colorado was in the child’s best interest.
*1230 1. The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in ' the child’s life.
Ms. Stone stated she is the primary caretaker of the minor child. She testified that in spite of asking for input, Mr. Poe is not involved in the decision-making for the child. Mr. Poe contradicted that statement, testifying that he was not included in the decision-making processes for the child. Both parties testified that Mr. Poe sees the child approximately four times a week, as his work schedule permits.
IfiTo support his argument that the first factor is in his favor, Mr. Poe points to this Court’s decision in Franz v. Franz, 98-3045 (La.App. 4 Cir. 6/16/99), 787 So.2d 943. Therein, this Court stated, “[i]t is obvious that children generally are advantaged by substantial contact and close relationships with their parents.” Id., p. 9, 737 So.2d at 947. While this is true, this factor requires us to look at more than the quantity of time that a parent spends with a child. The court is to look at the nature, quality, and extent of involvement of the relationship between the parent and child. From the testimony presented, the nature, quality, and extent of Ms. Stone’s relationship with her son exceeds that of Mr. Poe.
2. The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development.
At the time of trial, the minor child was twenty months old. There was no evidence presented that the child’s physical development would be impacted in any way by the relocation.
With respect to educational development, Ms. Stone testified that Littleton, Colorado has a good school district. Conversely, Mr. Poe noted that he lives in the school district with some of the best charter schools for middle and high school in Louisiana. However, he agreed that there was no guarantee that the child would attend a charter school.
While Mr. Poe concluded in his brief that the child would suffer emotionally if relocated away from his father, Mr. Poe presented no evidence, expert or otherwise, that his son would suffer emotionally if he relocated. Thus, there is no 17evidence that the relocation would have a negative impact on the child’s physical, educational, or emotional development.
3.The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
Ms. Stone proposed to return to New Orleans every three to four months to allow Mr. Poe physical visitation until the minor child is of school age. Once the child begins school, visitation would be determined by his school schedule. Ms. Stone testified that video chatting was available, allowing Mr. Poe and the minor child to see one another when talking.
Mr. Poe testified that if his son is allowed to relocate, he would be forced to take off of work without pay to spend time with his son. However, Ms. Stone proposed a feasible arrangement to preserve the relationship between Mr. Poe and his son.
*1231 4. The child’s views about the proposed relocation, taking into consideration the age and maturity of the child.
The minor child was twenty months old at the time of trial. Thus, this factor is not applicable.
5. Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
In an attempt to show that Ms. Stone has thwarted his relationship with his son, Mr. Poe argues that he had to forego his New Year’s Day visitation in 2011 because Ms. Stone went to Colorado with their son. He also argues that Ms. Stone hindered his Father’s Day visitation by not allowing him as much time as possible. |sMr. Poe further avers that Ms. Stone moved the daycare of the minor child, which affected the amount of time he was able to spend with his child, as the drive to the new daycare was longer.
However, Mr. Poe himself testified that he did not object when Ms. Stone mentioned her travel plans to Colorado. He further testified that he sometimes works seven days a week, and that he was scheduled to work until 5:00 p.m. on Father’s Day, but he was able to leave work early.
According to Ms. Stone’s testimony, she was on the north shore when she received Mr. Poe’s phone call on Father’s Day, and she could not bring their son back earlier to accommodate Mr. Poe’s last minute schedule change. She also testified that she researched two daycares recommended by Mr. Poe; however, neither was available. Both parties testified that they work with Mr. Poe’s schedule to ensure that he visits the child. Considering the testimony, there is no evidence of an established pattern by Ms. Stone to hinder Mr. Poe’s relationship with them son.
6. How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.
Ms. Stone testified that having the support of her family will allow her to work at the same time that she returns to school to become a registered nurse. Being a registered nurse will increase her earning potential. As discussed, there will be more support and access to quality schools in Colorado.
7. The reasons of each person for seeking or opposing the relocation.
IsAgain, Ms. Stone’s reasons for relocating are to have additional familial support and to further her education in order to provide a better life for her son. Mr. Poe objects to the relocation because he will lose quality time with his son. Conversely, the child may be negatively affected by his loss of regular contact with his father.
8. The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
Ms. Stone testified that she is employed part-time, working three days per week. Ms. Stone stated that she makes $18.50 per hour, but is planning to go back to school to become a registered nurse, which will increase her earning potential. Ms. Stone’s grandmother agreed to house Ms. Stone and the child while Ms. Stone applied for jobs. Mr. Poe works, sometimes seven days a week, as a family service counselor at a funeral home. Mr. Poe stated that he makes $10.80 per hour, with no paid holidays.
Since the proposed relocation may increase Ms. Stone’s earning potential, the *1232 circumstances for the child may be positively affected.
9. The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child- support, spousal support, and community property, and alimentary obligations.
The record contains no evidence that Mr. Poe is in arrears in his child support.
10. The feasibility of relocation by the objecting person.
Mr. Poe concluded that it is not feasible for him to relocate because he was born in New Orleans, and has a job in New Orleans. However, Mr. Poe offered no 11fltestimony as to familial ties in New Orleans that would affect the feasibility of relocating. Mr. Poe offered no testimony as to the uniqueness of his job requiring him to stay in New Orleans. While Mr. Poe concluded that he does not work for a large conglomerate that could transfer him, Mr. Poe did not testify that he could not work in the funeral home business in Colorado.
11. Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
Ms. Stone testified that Mr. Poe was “volatile” and yelled .at her in front of their child. While not condoning such behavior, there is no evidence that any yelling rose to the level of harassment. Nor is there any indication of substance abuse or violence by Mr. Poe.
12. Any other factors affecting the best interest of the child.
There is no indication that the trial court considered any other factors.
After reviewing the record and considering the factors set forth in La. R.S. 9:355.14, we cannot find that the trial court abused its discretion in authorizing Ms. Stone to relocate with her son.

CONCLUSION

Accordingly, the judgment of the trial court granting Ms. Stone permission to relocate to Colorado is affirmed.
AFFIRMED