NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-182

GEORGE WESLEY HIGGINS

VERSUS

SARAH BETH ADAMS HIGGINS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 260,785
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

AFFIRMED IN PART; REVERSED IN PART AND RENDERED.

**Jeremy C. Cedars**
**Fine Legal Services, L.L.C.**
**4615 Parliament Drive, Suite 202**
**Alexandria, Louisiana 71303**
**(318) 767-2226**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**George Wesley Higgins**


**Angelo J. Piazza, III**
**Attorney at Law**
**Post Office Box 429**
**Marksville, Louisiana 71351**
**(318) 253-6423**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Sarah Beth Adams Higgins**

**CONERY, Judge.**

Sarah Beth Higgins (Sarah) appeals the portion of the trial court's December 14, 2020 judgment which allows the father, George Wesley Higgins (Wes), summer visitation beginning one week after school recesses until one week before school begins again. The judgment is silent on alternate weekend visitation for Sarah.

Wes has answered the appeal and seeks to reverse the trial court's judgment granting Sarah's motion for relocation allowing her to move the two youngest children, then ages ten and twelve, from Alexandria, Louisiana to Metairie, Louisiana. For the following reasons, we affirm the relocation and reverse and render granting Sarah's motion for alternative weekend visitation during Wes's summer custody.

### FACTS AND PROCEDURAL HISTORY

The parties were married in April of 2006 and divorced October 5, 2018. A joint custody decree was attached to the divorce decree and approved by the trial court. They have three children. The oldest, age 17 at the time of the hearing, is Sarah's biological daughter who was adopted by Wes. That child is now eighteen, and there is no issue as to her custody or relocation. The original custody decree issued in conjunction with the divorce decree on October 5, 2018, gave the parties joint custody of the two youngest children and made Sarah the domiciliary parent. Wes had visitation one night during the week and on alternate weekends. Holiday visitation was clearly delineated in the original custody decree. That decree provided for an alternating weekend schedule during the summer, as both parents and the two minor children resided in Alexandria at that time.

Sarah sought to relocate the two minor children to Metairie where she intended to live with her fiancé. She testified that at the time of the hearing she was

fifteen weeks pregnant by her fiancé, Dr. Bob Reilly, a Professor at Tulane School of Medicine and a Trauma Surgeon at University Hospital in New Orleans. Sarah further explained that her pregnancy was considered a high risk as this would be her fourth cesarian section, and that she was seeing a specialist in the New Orleans area. Sarah testified there were no such specialists available in Alexandria, Louisiana.

Sarah claimed that the main reason for her proposed relocation of the children to Metairie was to take advantage of an advancement in her employment with Heart of Hospice, an advancement not available in Alexandria. Sarah indicated that she would be eligible for a substantial raise and thus better able to support herself and the children. She also testified that the schools for the minor children, then in the fifth and seventh grades, were superior to the schools in Rapides Parish and that there were more cultural advantages for the children. Sarah's initial motion for relocation was filed on June 3, 2020. A supplemental petition for relocation was filed on August 14, 2020, and was heard by the trial court on September 30, 2020.

After hearing all the evidence, the trial court thoughtfully considered the relocation issue, granted Sarah's motion to relocate and rendered extensive oral reasons for allowing the relocation. As to visitation during the summer months, the trial judge stated, "**So, the visitation every other weekend.** First week after school, they go here (meaning their father's home in Alexandria) for the whole summer, and y'all split holidays." (Emphasis added.) The transcript of the trial court's ruling was followed by a vague and confusing colloquy between opposing counsel and the court on the issue of summer weekend visitation for Sarah after the relocation.

Wes, in answer to Sarah's appeal on the issue of summer visitation discussed *infra*, answered the appeal and argues that the trial judge's ruling allowing Sarah to relocate with the minor children was an abuse of discretion.

We will first discuss the relocation issue.

## THE RELOCATION ISSUE

### *Standard of Review*

> A trial court is granted vast discretion in deciding custody matters; therefore, its decision "will not be disturbed on appeal absent a clear showing of an abuse of discretion." *Lowe v. Lowe*, 51,588, p. 12 (La.App. 2 Cir. 9/27/17), 244 So.3d 670, 678. "As long as the trial court's factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may not reverse, even though convinced it would have weighed the evidence differently if acting as the trier of fact." *Id*.

*Carranza v. Carranza*, 18-971, p. 5 (La.App. 3 Cir. 6/5/19), 276 So.3d 1028, 1032.

### *Burden of Proof*

"The person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child." La.R.S. 9:355.10.

The Louisiana Supreme Court in *Gathen v. Gathen,* 10-2312, pp. 9-10 (La. 5/10/11), 66 So.3d 1, 7-8 (footnotes omitted), discussed the burden of proof applicable in relocation cases:

> In *Curole v. Curole*, 02-1891 (La.10/15/02), 828 So.2d 1094, we first discussed the burden of proof in a relocation case. We stated that as in divorce, adoption, and termination of parental rights cases, "Louisiana's relocation statutes retain the 'best interest of the child' standard as the fundamental principle governing decisions made pursuant to its provisions." 828 So.2d at 1096. As explained, the relocation statutes govern the relocation of a child's principal residence to a location outside the state, or, if there is no court order awarding custody, more than 150 miles within the state from the other parent, or, if there is a court order awarding custody, more than 150 miles from the domicile of the primary custodian at the time the custody decree

was rendered. *Id.* Pursuant to, La. R.S. 9:355.13.[1] the relocating parent has the burden of proving that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the child. In determining the child's best interest, the court must consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life. La. R.S. 9:355.13. In *Curole*, we explained that by placing this two-part burden on the relocating parent and placing no burden on the nonrelocating parent, the legislature chose to assign a very heavy burden to the relocating parent to prove that relocation is in the best interest of the child. *Curole*, *supra* at 1097.[2]

## THE TRIAL COURT'S REASONS FOR RULING

After the close of evidence and testimony, the trial court took a break, returned to the bench, and gave extensive reasons for ruling beginning with the required determination of whether or not "the proposed relocation is made in good faith . . . ." *See* La.R.S. 9:355.10. The trial court found as follows:

> The Court is of the opinion that she was in good faith. And what [led] the Court to believe she was in good faith is, there was testimony about whether or not the two parents had discussed this. They both agreed that there were discussions. The dad agreed he discussed moves to Lafayette with the mom, and he discussed her possibly getting another job. And she stated that every time she had an interview, she discussed it with him.
>
> I think they did have a good, open line of communication when all this wa[s] going on. He encouraged her. He said he encouraged her. He said--his words w[ere], 'He didn't know about the kids. He would have to research it.' He then said, 'It would not be okay.' He said, and his words, 'He didn't want to rain on her parade.'
>
> By not coming straight out and telling her, 'You can do what you want to do. If you want to move, if you want to get you another job, I'll be happy for you, and I'll support you in that, but you're not taking my kids. That wasn't said. The discussions, just from both of their testimony, the Court is of the opinion he [led] her to believe it was okay. You don't discuss jobs – what did he think she was gonna do with the kids? Did he really think – I mean, why didn't he ask. Okay, if -- if he

---

[1] La.R.S. 9:355.13 is now cited as La.R.S. 9:355.10 effective August 1, 2012.

[2] Louisiana Revised Statutes 9:355.2 was revised effective August 1, 2012 and the pertinent distance from the domicile of the primary custodian at the time that the custody decree was rendered was reduced from one hundred fifty miles to seventy-five miles.

4

wasn't sure about what she was gonna do with the kids, why didn't he ask: Well, are you planning to go, but you're gonna leave the kids with me? That – the normal things that should have happened did not happen, which led her to believe it was okay.

Now, when she did send the letter and he objected, then she knew definitely, she – because she consulted with an attorney. She said she wanted to do it legally. She wanted to make sure she covered, I guess, her bases, and knowing that they had discussions about it, she wanted to do it the proper way.

So that's why I don't think she acted in bad faith. I just don't feel like there was -- you--you --you just don't encourage somebody – it's good to encourage a person, but it's always good to just be open and up-front. That way, you don't have any misunderstanding, you – you know we're both on the same page of music.

The trial court then addressed in turn all the factors that govern a motion for relocation pursuant to La.R.S. 9:355.14. After thoughtful and careful deliberation, the trial court issued its oral ruling.

## RULING OF THE TRIAL COURT

BY THE COURT:

And so, I'm gonna let – allow her to leave, [(relocate the children)] but I will [allow] you to leave only under this circumstance: There's to be no corporal punishment. They are to talk to their grandparents. If they want to talk to them twenty times a day, they are allowed. If I find out you're not allowing them to speak to any one of their family members, if I find out that you have been exercising corporal punishment - and I will find out – you can just say goodbye. Because the minute I find out about the first incident, and . . . . I'm telling you it is not a threat, ma'am, I'm just telling you how I feel about it. I question – I was back there questioning whether or not I should let them go. Of course, these things weigh heavy on me. It's your kids, but it still weighs heavy on me. But, if I find out about any corporal punishment, if I find out you're not allowing them to make those phone calls, I will take the kids and give them back to the dad.

If they would have been smaller kids, I, I'm gonna tell you this, they would not be going with you. It's only because they're ten and twelve that I'm allowing them to go, because they're big enough to open their mouths and say something is happening in that house. And if it happens again, I, I -- you have an anger problem, or something is going -- because of what they told me about you. I didn't like that, but I do agree you can discipline. But the -- it's something not right about your discipline, and I think it's because you have some under[lying] –

I guess you get mad, maybe, because you say, 'I'm the mom, and they can't tell me what to do.' And I understand that, but it's still a right way to discipline.

So, the visitation every other weekend. First week after school, they [are to] go here for the whole summer, and y'all split holidays.

*Discussion*

Wes argues that the trial court abused its discretion in granting the relocation of the two minor children. He asserts that only one factor pursuant to La.R.S. 9:355.14 weighs in favor of the relocation, Sarah's economic advantage. This economic advantage is based on the significant amount of money that Sarah's fiancé, who is a physician, earns and the anticipation of the consolidation of the family when the couple marries, plus the advancement in Sarah's present occupation and expected future income.

Wes points out that the trial judge's reasons found Wes's entire family and even parts of Sarah's family live in Rapides Parish. The children's school friends and physician are also in Rapides Parish. Furthermore, the trial court found Wes to be a hands-on dad, who sees his children daily and is extremely involved in their lives and activities.

We note that the trial judge gave thoughtful consideration to her decision before giving extensive reasons for ruling. The trial court's oral reasons for ruling and the subsequent signed judgment seemed to address the issues which concerned Wes. The trial judge ordered Sarah to allow the children to have unfettered access to Wes and his extended family, permitting the two minor children to call or receive calls from Wes or their paternal grandparents as often as they wished. The trial court also expressly forbad Sarah to use any form of corporal punishment on the two children, and warned her that if either of these circumstances occurred, the two

6

children would be removed from her custody and returned to their father, Wes.

One of the reasons the trial court chose to let the two minor children move with Sarah was that, at their age, they were able to communicate and advise their father or grandparents whether there were any problems. It was apparent that the trial judge thought long and hard about her decision to grant the relocation, which is clear from the trial court's extensive findings and reasons for ruling. We find that ruling was within the trial court's vast discretion and affirm the trial court's ruling on the relocation issue.

## THE SUMMER VISITATION ISSUE

Following the hearing, the parties could not agree on a form of judgment as to summer visitation for Sarah. Sarah's attorney filed a motion to clarify that issue, and the trial court held a hearing on December 14, 2020. The trial court appeared to confirm that her normal ruling would include summer visitation every other weekend during the summer holidays. In her oral ruling at the conclusion of the hearing on the relocation issue, the trial judge had specifically stated: "So the visitation every other weekend." We construe that statement to mean that the trial judge orally ordered summer visitation for Sarah every other weekend.

Moreover, the minute entries of both the September 30, 2020 hearing on the relocation and the December 14, 2020 hearing on the clarification of the judgment contain language on this issue providing that Sarah would be entitled to "having every other weekend in the summer[,]" when the father, Wes, had custody of the children during the summer months. The final judgment does not so specify, hence this appeal.

Because of the confusing colloquy on this issue between the trial judge and the attorneys, it is arguably unclear whether the trial judge's ruling gave Wes

visitation for the entire summer without Sarah having every other weekend visitation. The judgment is silent on that issue. For some reason, the trial judge, while expressing that every other weekend visitation is her usual practice in cases such as this, nevertheless failed to sign a judgment so specifying.

We reverse, finding on the record before us that visitation is appropriate and must be allowed in the absence of evidence that such visitation would not be in the children's best interest. To the contrary, we find that it is.

We hereby Order that Sarah Higgins is to have visitation with her two minor children C.H. and H.H. every other weekend during the summer months when Wes Higgins has summer custody of the minors. Sarah is responsible for the transportation of the children to and from her summer visitation at her expense.

## CONCLUSION

For the foregoing reasons, we find that the trial court did not abuse its vast discretion in granting Sarah Higgins' motion for relocation and affirm the December 14, 2020 judgment granting relocation. That portion of the of the trial court's judgment failing to specifically provide for summer visitation is reversed. Sarah Higgins is hereby Ordered to have summer visitation every other weekend with her minor children C.H. and H.H. when Wes Higgins has summer custody of the minors. The trial court's original Judgment dated October 5, 2018, is otherwise to remain in effect. All costs are to be divided equally between the parties.

**AFFIRMED IN PART; REVERSED IN PART AND RENDERED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.