PER CURIAM.
|¾⅛ this child custody matter, we are called upon to determine whether the family court abused its discretion in denying a mother’s motion to relocate to another state with her minor child. For the reasons that follow, we conclude the record supports the finding that the family court failed to properly apply the relocation factors and therefore abused its discretion in denying the mother’s motion to relocate.
UNDERLYING FACTS AND PROCEDURAL HISTORY
Misty Hernandez (“mother”) and Brandon Jenkins (“father”) are the parents of M.H., a minor child born in 2004. Although the parties were never married, *525 the father executed an affidavit acknowledging paternity. Both parties resided in East Baton Rouge Parish.
Shortly after M.H.’s birth, the mother petitioned for paternity, custody and child support. In October 2004, the parties entered into a stipulated judgment which designated the mother as the domiciliary parent and granted the father custody every other weekend, with extended custody during holidays and summers. Additionally, the father agreed to pay $386 per month in child support, and forty-eight percent of the child’s insurance premiums and uncovered medical expenses.
|2In March 2011, the father petitioned to have child support reduced, alleging the parties entered into an extrajudicial custody agreement that included a reduction in support. In response, the mother asserted the father failed to fully pay child support during 2008, 2009, 2010, and 2011, accumulating arrears of $1,424.00. The mother further claimed the father owed $5,445.20 as his share of child care costs. The mother also sought an increase in child support, based upon the father’s increase in income since the 2004 consent judgment, and her termination from employment because of a reduction in staff.
Before the court conducted a hearing on these motions, the mother filed a “Motion for Court Authorization to Relocate Child’s Residence,” seeking to relocate her residence and the residence of the child to Enterprise, Alabama. In her petition, the mother asserted she was engaged to be married to Gary Ray, who served in the Air National Guard and resided in Alabama. The mother indicated she recently had been laid off from her full-time employment as a mortgage processor in Louisiana and was presently working in a part-time capacity. She alleged the job opportunities in Alabama were more plentiful, and the relocation was “necessary to improve the circumstances of the Plaintiff/custodial parent and enhance the general quality of life for both the custodial parent/Plaintiff and the child.... ” Finally, she alleged the father has not paid the child support he owed and indicated she filed a motion for arrearages.[1]
The matter proceeded to a hearing before the family court. At the hearing, the family court heard testimony from the mother, Mr. Ray, the father and the child’s paternal grandparents.
|sThe mother testified she .was M.H.’s primary caretaker since his birth. She indicated she had recently married Mr. Ray, who was employed as an aircraft mechanic at the Fort Rucker Army Base, which was approximately six miles away from Enterprise, Alabama. Mr. Ray has two children of his own. According to the mother, M.H. got along well with Mr. Ray’s children.
The mother testified she wished to move to Enterprise, Alabama, which was approximately five hours away from Baton Rouge. She asserted the move would not affect the father’s custody rights under the October 2004 stipulated judgment and proposed the parties could exchange custody by meeting at a halfway point near Mobile, Alabama.
Regarding her employment, the mother testified she worked in the mortgage industry but had been laid off. She was unable to find employment in the Baton *526 Rouge area and had been working part-time at a shoe store, but that job ended. She described herself as “struggling” and noted both her mortgage and car note were behind. She had a job opportunity as a mortgage processing assistant in Alabama, which would allow her to work from home. As a result, she would not be required to place M.H. in child care after school.
The mother testified that if she was allowed to relocate, she could place M.H. in an elementary school which had a smaller class size than M.H.’s current school, Shenandoah Elementary. According to the mother, M.H. did “okay” at Shenandoah, but the classes there were big and there were complaints about M.H.’s first grade teacher.
The mother testified her relocation would not affect the father’s custody rights as set forth in the October 2004 stipulated judgment. She proposed that the parties maintain the every other weekend schedule, along with the agreed-upon holiday and bsummer schedule. Additionally, she pointed out she offered the father an additional week of custody during the spring break/Easter holiday, even though the October 2004 stipulated judgment provided only for Easter Sunday. She also indicated she would make every effort to allow the father to visit M.H. in the event the father was traveling near Alabama. She cited examples in the past where she allowed the father to see M.H. outside of the ordinary custody schedule and stated, “I’ve never told him no.”
The mother testified the father owed her past due child support in the amount of approximately $7,000. Although the court rendered a judgment for this amount in May 2011, the father had not paid any portion of this judgment at the time of the August 2011 hearing. The mother testified the father continued to pay his current child support, but has been paying it later than the 1st and 15th of the month. As evidence of late payment, she produced an envelope for the June 15 payment which was postmarked June 27.
Upon relocation, M.H. would have medical, dental and vision insurance coverage through Mr. Ray’s employer. Mr. Ray worked from 5:30 a.m. to 2:00 p.m. and would be able to assist in taking care of M.H. The mother testified M.H. got along very well with Mr. Ray.
Mr. Ray testified that he has lived in Alabama for over ten years. He was under a six-year contract with the National Guard of Alabama, and had four years remaining on his contract. He looked for work in Louisiana, but was unable to find any positions. Mr. Ray testified he was willing to help the mother care for M.H. Mr. Ray noted M.H. referred to him as “Dad,” but testified he did not request that M.H. refer to him in that manner.
UM.H.’s paternal grandmother, Donna Jenkins, testified she frequently saw M.H. or talked with him on the phone. Mrs. Jenkins, a retired teacher, helped M.H. with homework, and encouraged M.H. to read books. She testified her son (M.H.’s father) had a “good salary” and was able to provide a “nice permanent home” for M.H. She indicated her family was involved in many clubs and organizations in the Baton Rouge area, and felt these family activities added a lot to M.H.’s life. She considered M.H. to be a “very important part of our family,” and she “would love for him to be a part of it.”
M.H.’s paternal grandfather, Kenneth Jenkins, testified he engaged in several activities with M.H., including fishing and hunting, and going to LSU games. Mr. Jenkins considered M.H.’s father to be a good provider for M.H., and believed he had a stable work history. Mr. Jenkins *527 felt that if M.H. moved to Alabama, he probably would have no contact with M.H. during the time he was in Alabama unless he initiated a phone call, and would “miss out on a relationship.”
The father testified that he opposed the relocation of M.H. to Alabama. He felt it was in M.H.’s best interest to remain in Louisiana.
The father indicated he actively participated in M.H.’s education. According to the father, the school M.H. attended, Shenandoah Elementary, was a blue ribbon school and “probably the best elementary public [school] in our area.” M.H. had some problems with reading skills, and the father worked with a teacher to address those weaknesses. However, on cross-examination, the father admitted he did not enroll M.H. with a reading coach until the summer, despite the fact M.H. was struggling during the school year.
The father testified that over the past three or four years, he and the mother had an informal agreement to exercise custody on an alternating fourteen-day basis, where Reach party had M.H. for seven days. He assumed that if the mother and M.H. relocated to Alabama, they would return to the original arrangement under the 2004 agreement under which he had custody every other weekend and on alternating holidays.
The father testified M.H. interacted with his family “all the time,” and enjoyed activities such as hunting or fishing. His mother and father, as well as his sister and brother-in-law were nearby, in addition to friends and neighbors. The father described his support network as “gigantic.”
The father admitted he owed approximately $7,000 in past child care and child support, which had been unpaid for nearly three months. However, he testified he was timely in paying his current child support obligations.
At the conclusion of the hearing, the family court denied the mother’s motion to relocate. In lengthy oral reasons for judgment, the family court acknowledged the mother’s request to relocate was made in good faith, and recognized the relocation would have benefits for both the mother and the child. Nonetheless, the family court emphasized the negative impact of the relocation on M.H.’s relationship with his father and relatives in Louisiana:
The challenge is I do find that this custodial arrangement that is proposed in this case by Ms. Hernandez does have a negative impact on the child’s relationship and the child’s time with his father. That is [M.H.’s] time with his father. I find it problematic because Mr. Jenkins’ visitation would in fact be limited by the distance 2½ hours for travel for the father to pick up the child, as well as the mother to meet him twice in a weekend, twice a month. And for the child that is 5 hours of travel on a Friday and 5 hours of travel on a Sunday. So 10 hours within that 3 day period.' I also find that the distance would restrict the weekday interactions between the father and the child, and contact between the child and the extended family; particularly the grandparents which [illegible] seems to be consistent and significant. And I make a distinction because [the mother’s counsel] continuously made great points with the witnesses 17to distinguish the weekend time which while limited by.the travel, Mr. Jenkins and his family members will still get to enjoy, like I don’t think he’s going to miss like an LSU game and think he’ll still get to go hunting and fishing, although there will be some limitations with the time. It is for that reason that I was very concerned about what [M.H.] had been enjoying in terms of a custodial *528 arrangement with his parents prior to the time that this litigation started.
The mother appealed. A five-judge panel of the court of appeal affirmed the family court’s judgment in a split decision. Hernandez v. Jenkins, 12-0097 (La.App. 1 Cir. 11/30/12) (not designated for publication). Two judges dissented, explaining that as a result of the family court’s decision, “M.H. and his mother are sentenced to remain in financial difficulties because of limited employment opportunities, and she is unable to join with her husband in providing emotional and financial support for M.H. as a member of their family.”
Upon the mother’s application, we granted writs to consider the correctness of the family court’s judgment denying the mother’s motion for relocation.[2] Hernandez v. Jenkins, 12-2756 (La.3/15/13), 109 So.3d 370. The sole issue presented for our consideration is whether the family court abused its discretion in denying the motion to relocate.
DISCUSSION
A parent seeking to relocate the principal residence of the child is required to show: (1) the request for relocation is made in good faith; and (2) the move is in the | Rchild’s best interest. La. R.S. 9:355.13;[3] Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094, 1097. La. R.S. 9:355.12(A)[4] sets forth twelve factors which the court must consider in determining whether the proposed relocation is in the best interest of the child.[5] However, *529 there is no requirement that the court give ^preferential consideration to any factor. Gray v. Gray, 11-0548 at p. 18 (La.7/1/11), 65 So.3d 1247,1255. Where the trial court has considered the factors listed under La. R.S. 9:355.12 in determining whether relocation is in the best interest of the child or children, the court’s determination is reviewed for abuse of discretion. Gathen v. Gathen, 10-2312 at p. 1 (La.5/10/11), 66 So.3d 1, 2.
In the instant case, the family court determined the mother satisfied the first part of her burden under La. R.S. 9:355.13 by establishing the request for relocation is made in good faith. We agree. The mother’s testimony indicates the request for relocation was based on her recent marriage to her new husband, who lived and worked in Alabama. Additionally, she testified she was unable to find employment in her field in Louisiana, but had found a position in Alabama. This testimony supports the conclusion that the mother’s request to relocate was made in good faith.
We now turn to the question of whether the mother proved the relocation is in the child’s best interest. In this regard, the family court recognized the relocation would have tangible benefits for the child. This determination is supported by uncon-troverted evidence in the record establishing that the child would derive a financial benefit from the mother’s employment in Alabama, as well as Mr. Ray’s |inincome and insurance coverage.[6] Additionally, the family court found the child would receive intangible benefits in the form of emotional support from being in a family unit with the mother, Mr. Ray, and his children.
However, in denying the relocation, the family court emphasized the negative impacts on the child’s relationship with his father, explaining that the father’s visitation would be “be limited by the 2½ hours for travel for the father to pick up the child.... ” Additionally, the court found the distance would restrict interactions between the father, his extended family and the child.
La. R.S. 9:355.12(A)(1) directs the court to consider “[t]he nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child’s life” [emphasis added]. From the family court’s reasons for judgment, it appears the court focused on the potential negative impacts which might result to the non-relocating parties, such as increased travel time for the father. How *530 ever, we believe the focus of this provision is on the impact of the relocation on the child, as opposed to the impact on the non-relocating persons.
From the evidence in the record, we conclude the relocation would not significantly impact the child’s relationship with his non-relocating family members. To be sure, there will be some level of inconvenience for the father. Nonetheless, the mother has committed to maintain the current custody schedule set forth in the October 2004 stipulated judgment, providing the father with custody every other weekend, over the summer and during specified holidays. Additionally, the mother’s Intestimony indicates she is willing to do everything possible to foster a good relationship between the child and his father, as shown by her willingness to give the father an extra week of custody over the Easter holidays. Considering the entirety of this evidence, we believe any impact of the relocation on the child’s ability to maintain a close relationship with his non-relocating relatives is likely to be minimal.
Additionally, we do not believe the family court gave proper weight to La. R.S. 9:355.12(A)(9), which directs the court to consider “[t]he extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.” The undisputed evidence in the record reveals the father owed approximately $7,000 in past due child support and child care costs. Despite testimony in the record indicating the father had stable employment and received a good salary, he had made no effort to pay any of the arrearages at the time of the August 2011 hearing. Although the mother testified he continued to pay his current child support obligation, she pointed out he was consistently late in his payments.
In reasons for judgment, the family court stated, “I cannot emphasize enough how the timely payment of child support and paying off those arrears is important and will become even more important now.” Nonetheless, as observed by the dissenting judge in the court of appeal, the family court did not acknowledge that the father’s failure to comply with his support obligation exacerbated the mother’s financial difficulties resulting from her inability to find work in her chosen field. The father’s failure to fully comply with his support obligations, while at the same time opposing the mother’s request for relocation, exposes the child to an uncertain and untenable financial future. This factor, when considered together with the financial benefit to |i2the mother and child resulting from the move, weighs in support of the proposed relocation.[7]
In summary, we conclude the record supports the determination that the relocation will have positive benefits for the child. We further find the record establishes the relocation will not significantly affect the current custody schedule, nor will it adversely affect the child’s relationship with his Louisiana relatives. Under these circumstances, we find the family court abused its great discretion in denying the mother’s motion to relocate.
*531 In reaching this conclusion, we do not intend to repudiate the well-settled principle that the trial court is afforded great discretion in relocation matters. Rather, our decision today stands only for the proposition that under the specific facts presented in this case, the family court failed to properly weigh and apply the relevant factors. An analysis of the relevant facts in light of undisputed evidence in the record leads to the inescapable conclusion that the family court clearly abused its discretion in denying the relocation.
Accordingly, we reverse the judgments of the lower courts and hereby render judgment in favor of plaintiff, Misty Hernandez, granting her motion to relocate her residence and the residence of the child to Enterprise, Alabama.
DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. Judgment is rendered in favor of plaintiff, Misty Hernandez, granting her motion to relocate her residence and the residence of the child to Enterprise, Alabama.
VICTORY, Justice, dissents.

. On May 10, 2011, the family court rendered judgment in favor of the mother and against the father, finding that as of the date of the judgment, the father owed child support ar-rearages of $1,424.40 and child care costs of $5,445.20.. The family court also declined to find the father in contempt and continued without date the mother’s motion for modification of child support.

. Despite a request by this court, the father declined to file an opposition to the mother's writ application. After the case was docketed and a formal briefing order issued to the parties, the father failed to file a brief or participate in oral argument.

. At the time of the hearing of this case in 2011, the burden of proof in relocation cases was set forth in La. R.S. 9:355.13. By 2012 Act No. 627, the legislature amended and renumbered the statute as La. R.S. 9:355.10. In amending the statute, the legislature removed language from the prior version providing that in determining the child's best interest, "the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life.” Section 4 of the act provides "[t]his Act shall not apply to any litigation pending on the effective date of this Act regarding the relocation of the principal residence of a child, but shall apply to any subsequent relocation after final disposition of that litigation.” Because this litigation was commenced prior to the August 1, 2012 effective date of Act 627, the 2012 amendments are not applicable to the instant case.

. In 2012, La. R.S. 9:355.12 was amended and renumbered as La. R.S. 9:355.14. As discussed in footnote 3, supra, that amendment is not applicable to the instant case.

. As discussed in footnote 3, supra, the version of La. R.S. 9:355.13 in effect at the time of the hearing in this case mandates the court to “consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life.” Unquestionably, the evidence in this case establishes the relocation to Alabama will enhance the mother’s general quality of life, and this enhancement will have both direct and indirect benefits for the child.

. In reaching this conclusion, we do not depart from our holding in Gathen v. Gathen, 10-2312 at p. 17 (La.5/10/11), 66 So.3d 1, 12, in which we found a father’s failure to pay child support weighed against him, but "does not mandate that relocation be approved.” As in Gathen, the father’s fáilure to pay past due child support in this case is not by itself grounds for approving relocation, but is a factor to be considered along with the overall financial difficulties the child might encounter if relocation is denied.