NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CU 0876

ROBERT BRIDGES

VERSUS

KATHERINE LAUREL BRIDGES

*DATE OF JUDGMENT:*   **MAR 1 1 2024**

ON APPEAL FROM THE TWENTY SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
NUMBER 2020-15133, DIVISION L

HONORABLE DAWN AMACKER, JUDGE

* * * * * *

Vincent F. Wynne, Jr.
Shannon K. Lowry
R. Gary Higgins, Jr.
Whitney H. Germany
Covington, Louisiana

Counsel for Appellant-Plaintiff
Robert Bridges


Ana E. Lopez
Covington, Louisiana

Counsel for Appellee-Defendant
Katherine Laurel Bridges

* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**Disposition: AFFIRMED.**

**CHUTZ, J.**

Plaintiff-appellant, Robert "Cole" Bridges, appeals the family court's judgment, granting the request for relocation asserted by defendant-appellee, Katherine "Katy" Bridges to move with the parties' children from St. Tammany Parish to Houston, Texas. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Katy and Cole were married in April 2013 in Texas. In October 2013, they moved to St. Tammany Parish, where they had two children and built a house in Madisonville. In November 2020, Cole initiated this litigation, seeking a divorce from Katy and requesting joint and/or shared custody of their two minor children. Katy answered the lawsuit. On August 20, 2021, the family court signed a consent judgment, stipulating to the parties' joint custody of the children with Katy designated as the domiciliary parent. The parties agreed to Cole's physical custody of the children every other weekend and every Tuesday from 6 p.m. until Wednesday at 8 a.m. Holiday and summer schedules were also established in accordance with the parties' agreement.

On March 20, 2022, Katy filed a request for relocation of the children to Houston. According to the notice of intention to relocate that she sent to Cole, Katy's whole family lived in Texas and the children would have access to a vast support system if they relocated. Cole formally objected to the relocation.

The family court signed a judgment on August 9, 2022, rendering a final divorce between Katy and Cole. A hearing on Katy's request to relocate was subsequently held before a hearing officer. The hearing officer recommended the granting of Katy's request to relocate. Cole timely objected.

On November 2, 2022, a hearing was held before the family court judge. Subsequent to the receipt of testimonial and documentary evidence, the family court rendered judgment, granting Katy's relocation request and modifying Cole's

2

visitation schedule. A judgment in conformity with the family court's ruling was signed on February 7, 2023.[1] Cole timely appealed.

## DISCUSSION

Generally, the relocation of a child's principal residence to a location out of state is governed by Louisiana's relocation statutes. See La. R.S. 9:355.1-9:355.19; La. R.S. 9:355.2. When the relocation of the children's principal residence is contested, La. R.S. 9:355.10 requires that the relocating parent prove that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the children. Thus, Louisiana's relocation statutes retain the "best interest of the children" standard as the fundamental principle governing decisions made pursuant to its provisions. *Bridges v. Bridges*, 2020-0300 (La. App. 1st Cir. 11/10/20), 316 So.3d 17, 24. A family court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of an abuse of discretion. *Gathen v. Gathen*, 2010-2312 (La. 5/10/11), 66 So.3d 1, 8 n.4.

### Good Faith:

The jurisprudence has defined the meaning of "good faith" in the context of relocation as a legitimate or valid reason for the move. A legitimate reason for relocation includes to be close to significant family or other support networks. See *Dragon v. Dragon*, 2022-0076 (La. App. 1st Cir. 8/30/22), 2022 WL 3754615, at

---

[1] A rule to modify custody filed by Cole, requesting that he be designated as domiciliary parent, was also before the family court. The judgment signed by the family court expressly decreed that the parties remained joint custodial parents, with Katy designated as domiciliary parent and dismissed as moot Cole's custody modification request. Cole was granted physical custody of the children one weekend of every month. Evidence established that all but one month of the children's school year included a long weekend. Thus, the judgment stated that if the school calendar included a long weekend, it was deemed as Cole's weekend to have physical custody of the children; otherwise, he was awarded physical custody on the first weekend of the month and any time he is in Houston with 48 hours advance notice. Katy was ordered to transport the children from Houston to Covington for Cole to exercise his monthly physical custody. The holiday schedule determined by the August 20, 2021 consent judgment remained in effect, except that Cole was awarded physical custody of the children during Spring Break in lieu of the Mardi Gras holidays. A compliance hearing was set for April 25, 2023 to address the summer schedule if the parties were unable to determine one for themselves.

3

*2, citing *Wylie v. Wylie*, 52,800 (La. App. 2d Cir. 5/22/19), 273 So.3d 1256, 1259.

In its oral reasons for judgment, the family court found no evidence that Katy had an ill motivation or a desire to punish Cole in seeking the relocation, emphasizing instead Katy's testimony that she wanted to relocate to Houston to be around her friends and family, i.e., her support group, and to return to where she lived when she met and married Cole. The family court expressly determined that Katy was credible and that the relocation was good for her and the children to have a new start with a support system upon which Katy could rely.

In challenging the family court's conclusion that Katy's request to relocate was made in good faith, Cole asserts that Katy's reasons were not legitimate, valid, or truthful. Insofar as the support system that the family court found Katy sought to rely upon, Cole points out that Katy was raised in Port Lavaca, over two hours from Houston, which is where her parents reside. He also suggests that those Katy offers as a support group, including her sister, Erin Piper, and best friend, Katherine "Kate" Vaughn, are not realistically readily available since they are mothers with young children, who live about 25-30 minutes from Katy's proposed relocation address.[2] Thus, he maintains that Katy's "claim of a super support network in Houston was not a legitimate reason" and is insufficient to satisfy the requisite good faith showing necessary to grant her request to relocate.

Katy testified that she met Cole in Houston, where she began living after she graduated high school and obtained her college degree. Cole resided in Houston after having graduated with an engineering degree because there were better career opportunities for him. The couple eventually married in Houston. They moved to St. Tammany Parish because Cole had a job opportunity, but it was never Katy's

---

[2] Katy proposed to live at 615 Dinorah Court, Houston, Texas, in a 4 bedroom, 2-1/2 bath, 2900 square-foot, two-story house in the Krystal Lake Estates subdivision.

4

intention to remain permanently, and she thought Cole did not intend that they stay permanently either. Katy stated that she had been back to Houston 31 times since 2018, most often driving the approximately five-hour trip because it is "just as easy" as the 60-minute nonstop flight that she has also traveled.

Katy advised the family court that she wanted to move to Houston because "that's home," and she has a support system there. According to Katy, Houston is central to where the entire support system is located, with Cole in Louisiana, and numerous relatives in various parts of Texas including Port Lavaca and Austin. Katy identified Erin and Kate, along with two other friends who had been bridesmaids in her wedding, as part of her Houston-based support system, and introduced into evidence 20 photographs of friends located in Houston who Katy maintained were available to lend support to her and the children.

Although she has two good friends in St. Tammany Parish, Katy feels "isolated over here in Louisiana" and indicated that she wanted the children to have more frequent access to her family. Her isolation was particularly apparent to Katy after Hurricane Ida. She explained that she does not have a working relationship with any of Cole's family in Louisiana. Although Katy described Cole's mom as "a very nice person" and that she "comes from a caring place," in dealing with Katy and the children, Katy cannot rely on her, as evidenced by the inability of Cole's mom to install a car seat meaning she is unable to pick up the children from school.

Katy also testified that Cole has a drinking problem and is unreliable as support. When she first called out Cole's drinking issues in 2020, he undertook a program he found on the internet that encourages people to control their drinking but did not require abstinence. Katy admitted that she was naïve about the scope of Cole's drinking problems and did not bring them up when the parties first went to court. It was not until the parties separated and Cole continued drinking despite

5

having to care for the children without her present that Katy realized the depth of Cole's alcohol issues and stopped making excuses for him. Katy introduced into evidence eleven photographs she took throughout 2022 showing empty beer and seltzer cans in the back seat and bed of Cole's pickup truck. After she came to the realization that she and Cole were not going to reconcile and began to focus on coparenting, Cole's shortcomings became apparent to her and she changed her mind set. Katy stated that she felt like she was "doing it alone," referencing her attempts to raise the children in a healthy manner."

Katy's sister, Erin, who has lived in Houston for about ten years, testified via Zoom at the relocation hearing. She stated that Katy visits Texas once or twice every couple of months. Erin's two children are close in age to the parties' children, and she described that the cousins have good and close relationships. Although Katy's proposed relocation address is 15 to 30 minutes from their home (depending on traffic), Erin testified that she and her husband have flexible jobs and, therefore, are available to assist Katy as she may need.

Erin explained her own support system, identifying particular individuals who have known Katy for 15 to 20 years and suggesting that five adults were in close proximity to Katy, available to render assistance. Additionally, Erin noted that Katy knew others in the greater Houston area and described the network of friends committed to helping Katy and the children as a "kind of ... support web." According to Erin, Cole was not available to Katy on a daily basis and Katy could not count on him to show up within 30 minutes of a request. The remainder of Cole's family did not live as close to Katy as Erin would in Houston.

Katy's best friend, Kate, appeared in person at the relocation hearing. She has lived in Houston for twelve years and sees Katy frequently both in Louisiana and Texas. Kate has four children whose relationships with the parties' children she described as "close." She stated that Katy's proposed relocation address is

about 25 minutes from her home, and that she "will drop anything" to be available for Katy and the children. Kate identified Katy's support system of consisting of her sister and countless friends.

The above-outlined testimonial and documentary evidence that the family court relied upon in rendering a decision is entitled to great weight. As such, we find no error in the family court's conclusion that Katy's request to relocate to be close to significant family or other support networks was made in good faith. As such, we cannot say the family court abused its discretion in granting Katy's request for relocation on this basis.[3]

## Best Interest:

La. R.S. 9:355.14(A) sets forth twelve factors which the family court must consider in determining whether the proposed relocation is in the best interest of the child.[4] The family court is not required to expressly analyze each factor in its

---

[3] Cole also complains that Katy's statements in her motion to relocate, averring that Houston offered her significant job opportunities and that the children would benefit from a great educational system as well as testimony elaborating about the diverse and premier community and extracurricular activities available for the children in Houston, were insufficiently supported by the evidence so as to constitute the requisite good faith showing needed to allow a relocation. The family court did not base its finding of good faith on either of these bases. Since the family court did not err in finding Katy was in good faith in seeking relocation to be close to her support network, we find it unnecessary to determine whether the evidence was additionally supportive of a good faith request for either of these alternative bases and pretermit such a discussion.

[4] La. R.S. 9:355.14(A) provides:

> In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:
>
> (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
>
> (3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

oral or written reasons for judgment in a relocation case. *Gathen*, 66 So.3d at 9. And there is no requirement that the court give preferential consideration to any particular factor. *Hernandez v. Jenkins*, 2012-2756 (La. 6/21/13); 122 So.3d 524, 528-29, citing *Gray v. Gray*, 2011-0548 (La. 7/1/11), 65 So.3d 1247, 1255.

On appeal, Cole claims that the family court's oral reasons for judgment do not reflect that it thoroughly examined and analyzed the evidence in accordance with all the relevant statutory factors but instead concentrated on only those factors it found particularly compelling, "the majority of which weighed in favor of the children remaining in St. Tammany Parish." Cole consequently maintains that an analysis of each statutory factor that the family court considered shows that Katy failed to meet her burden of proving relocation was in the children's best interest.

Although the *Gathen* court has made clear that the family court is not required to expressly analyze each factor, our review of the evidence shows that every relevant factor was discussed in the oral reasons for judgment. Insofar as factor one -- the nature, quality, extent of involvement, and duration of the relationship of the children with the person proposing the relocation and with the

---

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

non-relocating person and other significant persons in the children's lives -- the family court stated, "[B]oth of you have a very loving relationship with your children; ... you have family members that are very attached, friends and family. ... [T]wo sides of the family ... love and care about [the children]." The family court also determined, "[B]oth ... can certainly take care of [the children's] educational needs, their physical, emotional development, [and] financially," in an apparent reference, at least in part, to factor two, which addresses the ages, developmental stages, needs of the children, and the likely impact the relocation will have on the children's physical, educational, and emotional development.

As to factor three, directed at the feasibility of preserving a good relationship between the nonrelocating person and the children through suitable physical custody or visitation arrangements considering the logistics and financial circumstances of the parties, the family court stated, "[T]he Court would find that certainly the relocation could work because it's Texas, it's Houston to here." The family court remarked that it was a destination most of those present in the courtroom had traveled either by vehicle or air and pointed out that Cole's employer had an office in Houston at which Cole worked from time to time. Also, the family court stated, "Houston's five hours, five and a half hours away. ... You do have cheap airfare .... [The children] are little. You will have to go with them if you do that. But it's not so far that a plan could not be worked out between the two of you ... where dad sees the children plenty." And in its reasons, the family court indicated that Cole might have a better relationship with the children if Katy relocated and the physical custody schedule were adjusted.

As to whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation either to promote or thwart the relationship of the children and the other party set forth as factor five, the family court "didn't hear anything at all ... that indicate[d] ... that [the parties] are trying

9

to undermine the children's relationship with the other parent," commending the parties for putting aside their differences and opinions about the other parent's ability to parent and "present[ing] a pretty solid front" to the children. Insofar as how the relocation of the children will affect the general quality of life for the children, including but not limited to financial or emotional benefit and educational opportunity, as provided in factor six, the family court concluded, "St. Tammany Parish is a great place," noting the "great schools, pretty good infrastructure" but also concluded, "Houston, just as good a place, wonderful place," and summarized "you can have a good life in Louisiana; you can have a good life in Texas, no doubt about it." Additionally, the family court was "impressed by the support group that [Katy] has in Houston. [Katy's] been doing this on her own with an alcoholic partner for a long time, who was not available at times."

The family court combined its comments about the reasons each person sought or opposed the relocation of factor seven with factor eleven's inquiry into the history of substance abuse, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation. According to the family court's oral reasons:

> This case is a story of generational alcoholism. And it is sad but true that three generations in the paternal line; you've had fathers who are alcoholics. The term "alcoholic" ... isn't used so much because it's a disease. There's no blame. ... [T]hey do believe there is a genetic factor to it. What we do know is that environmentally if you see it in the family, and particularly if there are enablers who excuse it in the families, which oftentimes mothers, wives, fathers, others will ... it tends to be repeated. We know that if your children have a parent that's an alcoholic that they have a very high probability that they will be too. ...
>
> Unfortunately, [Cole] ... for many, many years, has struggled with alcoholism, and not until all this came to court was it important enough or maybe even within his capability to quit. And the question is: Has he quit now? I don't know; I'll be honest with you. I know at best if he has, it's been two and a half months[.] ... [Dr.] John Mehlhorn -- who is [a] very well-qualified [licensed addictions counselor] ... looked at [Cole's alcohol issues] in great detail -- ...

and the level of concern [Dr. Mehlhorn] has as to what has to happen to make sure this is a real quit....

One thing that ... [Dr.] Mehlhorn knows ... is that you have to keep people honest. ... [B]ecause if you know you can get caught and you know that to get caught might mean you lose custody of your children, then you have real motivation. ... And you see [Dr.] Mehlhorn saying a year. I don't know. I would say longer than a year with most cases ... to really establish [a] sobriety that will continue, but I think one year would be the minimum.

I agree with Dr. Mehlhorn, having listened to [Cole], that the prognosis is good for him. I thoroughly agree with that. He's young. He is acknowledging he has an issue. I think he minimizes it to some extent. And people that have struggled with alcohol probably haven't been the clearest thinkers for awhile because they've been under the influence, and the damage that was done to your relationship with your former wife or even to your relationship with family members or your children, you really don't even completely understand the extent of it....

The other good thing that I'm hearing, and I do believe from [Cole] he thoroughly means [it], is his children mean more to him than alcohol does. It's got to. If they don't mean more to you than a drink, then this won't end well.... They're young enough ... that if you change and you do what you say you're going to do, they'll forget everything else that happened before, and they'll never know. Their new normal will be you're sober dad....

What concerns me ... is that so many of the things that [Dr. Mehlhorn] suggests, so many things that the treatment facility suggests, in my opinion, have not been implemented. And to be successful you're going to have to do it. You can't continue to have alcohol around you, not with the kind of problem you [have] had. This is a severe alcohol disorder in my opinion ....

If your girlfriend drinks, you might want to think about what's more important to you. If she can't quit alcohol when she's around you, you might have to quit her.... Your dad drinks excessively. It will be very hard for you to be around your father and not have a drink. And he's not helping out by drinking a 12 pack a day. And I'm very concerned about your children that see that and think that's normal. That's not good....

You can't have alcohol in the trunk or in the cab or wherever, your truck or your car. It's can't be there. It's a drug to you.... It's what you've used for years to rely on to get away from the world and you can't do it anymore. You can't.

11

As to factor eight examining the current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child of factor eight, the family court stated:

> [Katy] doesn't make nearly what [Cole] does, and it's hard for her here. And no one would tell you that they don't recognize that Houston has more job opportunities than ... here at the type of things you [parents] would do. Yes, there are job opportunities here, but I didn't really hear any real information that would lead me to believe that she has a real opportunity to better herself. ... She obviously is ambitious and ... she has good reasons and good contacts for trying to seek employment, has employment that she now can use to propel herself into another job hopefully in the Houston area.[5]

> [Cole] is well-employed.[6] That's good. He is in an industry that's doing real well right now where he can work probably anywhere [that] he wants to that are oil states, particularly Louisiana and Texas, but that's good that he is able to do that and also support the family.

The evidence of factor nine, addressing the extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, showed that Cole has paid his child support. Problems that the parties had about him paying his portion of the children's extracurricular activities expenses have been worked out. Thus, the family court noted that Cole has fulfilled his factor nine obligations.

The family court made a passing comment on factor ten -- the feasibility of a relocation by the objecting person -- in its factor three discussion. Specifically, the family court remarked that Cole could get a job in Houston probably making more money than he presently earns. It also alluded to the ease of relocation but stated

---

[5] Katy has a remote job selling legal software, for which she earns $54,000.00 annually, that she can perform in either Louisiana or Texas. Katy's B.A. degree from the University of Houston included a minor in health communication. She testified that she wants to work in healthcare marketing, identified particular healthcare connections she has in the Houston area, but explained that she did not want to apply for any positions or use her connections until she knew she would be allowed to relocate.

[6] Cole works as a subsea engineer with LLOG Exploration, a privately-owned, large independent oil and gas company, earning at least $200,000.00 annually. Although his employer has an office in Houston, it is not used for the work that Cole does.

12

that Cole's family, girlfriend, and life are in Louisiana and he was not required to relocate.

Based on our reading of the family court's oral reasons for judgment, it clearly considered all the relevant statutory factors. Overwhelmingly, it appears that no individual factor weighed heavily in favor of either parent. While the family court did not weigh the evidence as to each factor, reach a conclusion factor-by-factor as to which parent benefitted, and determine that the majority of factors weighed in favor of a particular outcome, this type of mechanical approach is not required. See *Gathen*, 66 So.3d at 9-10.

On review, we are tasked with examining the entire record to determine whether the family court abused its discretion in granting Katy's request for relocation. See *Gathen*, 66 So.3d at 8 n.4. Cole asserts the totality of the evidence "reveals ... that relocation was granted not because it was in the best interests of the children, but because it was in [Katy's]; she wanted and need to go 'home'."

In reaching the conclusion that relocation was in the children's best interest, the family court's primary focus was on Cole's alcohol issues (factor eleven). The family court also concentrated on the children's quality of life if they moved, particularly insofar as the support available for Katy in Houston (factor six).

Cole reported to Dr. Mehlhorn he began consuming alcohol when he was 15 years old increasing the amounts and frequency over time. In 2020 or 2021 Katy told Cole that he had a drinking problem. Although Cole voluntarily joined a program and was able to go weeks without consuming any alcohol, he admitted at his June 20, 2022 assessment he had last been intoxicated the night before and "full blown" intoxicated about a month earlier.

Cole established that on August 15, 2022, he was admitted into an intensive outpatient program (IOP) as recommended by Dr. Mehlhorn. In the IOP, his blood alcohol was screened twice a week. He graduated from the program on October 17,

13

2022, which was 16 days before the relocation hearing. In accordance with Dr. Mehlhorn's recommendation that he obtain an alcohol detection device, Cole started using BACtrack View, which recorded his blood alcohol daily and ensured his identity by taking a video of his face as he blew into the device. He produced a printout showing no positive readings commencing on September 16, 2022.

Cole testified that he realizes the effect alcohol was having on the children, indicating that Katy's request to relocate helped make his commitment to sobriety easier to undertake. He admitted having been under the influence of alcohol in the children's presence but stated that he had not since he entered the IOP. Cole also conceded that he had driven after having consumed alcohol, although he denied ever having done so with the children in the vehicle.

Cole acknowledged that while he maintains his sobriety, his girlfriend drinks one or two seltzers every day. His father, who Cole sees two to three times a week, also drinks six to twelve beers every day. Cole believes that he is "strong enough" to be around his girlfriend and father without drinking alcohol himself.

Insofar as Katy's efforts in caring for the children, as discussed fully in our review of whether Katy was in good faith when she made her request to relocate, the record contains sufficient evidence of Katy's strong support system in the Houston metro area and that the relocation places her in closer proximity to her other family members who reside elsewhere in Texas. Katy testified that she cannot rely on Cole's mother, who lives in Bay St. Louis, Mississippi, to assist in the care for the children, stating that the children's grandmother does not initiate phone or Facetime calls to the children and has had to stop at a firehouse to have car seats installed for the children to ride in her vehicle. According to Katy, she has never had an amicable relationship with Cole's father, who lives about an hour away from her. Cole's father testified that he had not talked to Katy since the parties separated. Cole's brother, who lives approximately five miles from Cole's

father's home, admitted that his relationship with Katy has become strained over time since the divorce.

The record also shows that Cole is not always reliable support for Katy in tending to the children. Cole testified, and Katy confirmed, that at Katy's insistence, Cole could not pick up the children from school but was required to adhere to the 6 p.m. pick-up time as set forth in the parties' consent judgment, because Katy wanted to be sure he was sober. Katy testified that when she was out of town for work, she talked to Cole on Facetime to ensure he was sober before he picked up the children. Katy offered testimonial and documentary evidence of Cole's failure to timely pick up one of the children from school without having given notice to either Katy or the school. Cole also failed to attend a school event for fathers, arriving after the event was over. Additionally, Katy testified that Cole has had to ask her for school uniforms for the children because he does not have any for them at his house.

The above-outlined evidence is entitled to great weight and fails to show the family court abused its discretion by granting Katy's relocation request, particularly in light of Cole's tender sobriety and the support system that Katy has in Houston. The record contains evidence establishing that a reliable support system is available in Houston to provide Katy with necessary assistance in caring for the children, which is clearly in the best interest of the children. Accordingly, the family court's grant of Katy's request to relocate was not erroneous.

## DECREE

For these reasons, the family court judgment is affirmed. Appeal costs are assessed against plaintiff-appellant, Robert "Cole" Bridges.

**AFFIRMED.**