GREGORY OVIDE

VERSUS

ERICA RIVERS

NO. 24-CA-140

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 847-030, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

October 16, 2024

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
John J. Molaison, Jr., and Scott U. Schlegel

**AFFIRMED**
   **SUS**
   **JGG**

**MOLAISON, J., CONCURS WITH REASONS**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
ERICA RIVERS
    J. Craig Diamond

**SCHLEGEL, J.**

Appellant, Erica Rivers, appeals the trial court's judgment denying her request to relocate her three minor children with Gregory Ovide from Jefferson Parish, Louisiana to Hoover, Alabama. For the following reasons, we affirm the judgment of the trial court.

*Procedural History*

Ms. Rivers is a United States Army veteran who served in Baghdad, Iraq. As a result of injuries and post-traumatic stress-disorder (PTSD), Ms. Rivers receives military disability. Ms. Rivers moved to the New Orleans area for employment in 2013. After meeting Mr. Ovide, the parties had three children: I.O. (D.O.B. 2016), G.O. (D.O.B. 2017), and E.O. (D.O.B. 2021). Sometime in August 2023, a few days into the 2023-24 school year, Ms. Rivers left Jefferson Parish, Louisiana with the children and relocated with them to Hoover, Alabama. Ms. Rivers contends that she had previously informed Mr. Ovide that she planned to leave Jefferson Parish, Louisiana and relocate to Hoover, Alabama. However, Mr. Ovide testified that he was unaware of the relocation before it occurred, and did not consent to the relocation.

Mr. Ovide filed a petition for domiciliary custody on September 11, 2023, seeking shared legal custody of the children and requesting that they be returned to Louisiana. Ms. Rivers denied the allegations of the petition. Following a hearing on October 24, 2023, the hearing officer recommended that the children be returned to the Greater New Orleans area by December 20, 2023. The hearing officer further recommended that if Ms. Rivers decided to return with the children, she would be designated as domiciliary parent, but if not, then Mr. Ovide would be designated as domiciliary parent. A judgment from the hearing was entered on November 7, 2023. Ms. Rivers timely objected to the hearing officer's recommendation that she should be required to return the children to Louisiana.

On December 18, 2023, the parties appeared before the trial court for a hearing as to relocation of the children. The trial court issued written reasons and a judgment on January 19, 2024, in favor of Mr. Ovide and against Ms. Rivers, and ordered that the children be immediately returned to the Greater New Orleans area no later than January 24, 2024.

*Factual History*

Around the time of the birth of their first child, I.O., in 2016, the parties purchased a home in Marrero, Louisiana. The home was in the name of Ms. Rivers because her credit was good, but Mr. Ovide provided the down payment. At the hearing before the trial court, Ms. Rivers testified that the school district near the home was not good, and did not have many activities for the children. Ms. Rivers testified that while she was in Louisiana, she mainly took care of the children. She also had side jobs and received military disability pay from the Veterans Administration. She stated that when she and Mr. Ovide lived together, he had a distant relationship with the children in that "[e]ven though he lived in the home, he was not there in the home." He did not help with bathing, cooking for them, or interacting with them. Ms. Rivers indicated that Mr. Ovide was violent, and that the violence escalated after he moved out. Their relationship ended around the time of E.O.'s birth, when Mr. Rivers moved out. She explained that she did not know why, but in April (2023), Mr. Ovide was angry at G.O. and was hitting him over and over with a shoe. She had to cover up G.O., and then Mr. Ovide started hitting her too. She said Mr. Ovide wasn't physical every time. But when he had the children and brought them back, sometimes they would be crying and saying "Daddy hit me or Daddy's mean to me."

Ms. Rivers acknowledges that she did not provide written notice about the relocation, but testified that she told Mr. Ovide of her proposed relocation of the children in March 2023 and that he agreed at the time. She stated that there were

more educational opportunities for the children in Alabama and that she had already enrolled her oldest child in a top-rated school in Hoover, which also offers art, music, and multiple activities. She further testified that she is from Hoover and has family there. She has no family in New Orleans and she and the children need emotional support. Ms. Rivers also found a program at the VA in Hoover for herself, and a corporate fellowship as a data analyst, which is a financial opportunity she did not have in Louisiana. Ms. Rivers testified that her life is 100% better in Hoover, considering the family support system for herself and the children, emotional support, educational opportunities, financial opportunities for herself, and the neighborhoods and top-rated schools. Before the move, she and Mr. Ovide had informal visitation. Mr. Ovide would see the children every other weekend for maybe an hour or two – he would take them to the store for an hour or so to buy toys, or candy, and then he would return with them. They did not ever see him more than one day in a row.

Ms. Rivers testified that she moved to Hoover on August 18, 2023. When she moved, Mr. Ovide helped her move furniture out of the home in Marrero and into a storage facility and even recommended a real estate agent for her to sell the Marrero home, all without objecting. She testified that she only ever heard that he disagreed with the relocation when she was served with the custody paperwork. Ms. Rivers stated that Mr. Ovide even sent money to Alabama for the children to buy candy and toys without objecting to their being in Alabama. Ms. Rivers testified that she never informed Mr. Ovide that he could not visit the children after she moved. Ms. Rivers pointed out that by having overnight visitation, Mr. Ovide would have more time with them than he did before the move. Ms. Rivers also testified that the children are excited to be in Alabama and like it there.

After she was served with notice of his custody paperwork on September 24, 2023, Ms. Rivers tried to communicate with Mr. Ovide about visitation, including

texting him to work on setting up visitation. She said she sent him information via Our Family Wizard about a visitation with him and the children for Thanksgiving 2023. She also testified that she drove the children to the designated meeting spot in the judgment (about halfway between the two locations) for him to take the children for a seven-day holiday, but Mr. Ovide did not show up or respond to the message she sent him. She said he has never gotten on the Our Family Wizard app.

Mr. Ovide also took the stand at the hearing on December 18, 2023. He testified that he did not know that Ms. Rivers was leaving with the children before the move. She just called him while he was at work and told him she was leaving with the children. He stated that with her PTSD, she would say things such as "we're going to move to China, we're going to leave you and move to Russia." He thought she was living off the money he gave her, and did not have enough money to move.

Mr. Ovide is a self-employed tattoo artist and lives with his grandmother in a four-bedroom home that is also shared with his uncle. He stated that before the children moved to Alabama, he brought them to school every morning and picked them up if Ms. Rivers could not pick them up. He would take them to the zoo, aquarium, or wherever they wanted to go "pretty much every weekend." He stated that Ms. Rivers did not contact him regarding the Thanksgiving visit, and he did not know he was supposed to pick up the kids for the Thanksgiving visit.

Mr. Ovide also testified that he was unable to communicate with the children after they left for Alabama, and that Ms. Rivers denied him access to the children. He said he had yet to talk to I.O., or the youngest child, E.O. He said that he stopped calling to speak to the children because he did not want it to seem as if he was harassing her. He wanted to let the court do what it was going to do.

24-CA-140                                        4

According to Mr. Ovide, it is about five and a half hours to Ms. Rivers' place in Hoover, so even if Ms. Rivers met him halfway, two and a half hours is too long. He does not like to travel and would be paranoid thinking about getting into an accident. The only time he leaves New Orleans is for a hurricane. He agreed that life in Hoover sounds good for the children, except that he is not in their lives. He would not be able to participant in parent-teacher conferences, field trips, and similar things. He has family nearby, including his mother, two grandmothers, seven sisters, a father, and cousins. He thinks it is in the children's best interest for them to move back to Marrero because the children need their father in their lives.

*Law and Discussion*

Ms. Rivers contends that the trial court abused its discretion in ordering the children to return to Louisiana to live because she relocated the children in good faith, and relocation is in the best interest of the children.

A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. *Gathen v. Gathen*, 10-2312 (La. 5/10/11), 66 So.3d 1, 8; *Duerson v. Duerson*, 23-311 (La. App. 5 Cir. 12/20/23), 379 So.3d 742, 753; *Cueva v. Gaddis*, 10-981 (La. App. 5 Cir. 5/24/11), 66 So.3d 1134, 1140.

In this case, the trial court held a hearing, listened to witness testimony, and considered exhibits submitted by the parties. The trial court adopted the hearing officer's report after hearing extensive argument by counsel. The trial court found that it was not in the best interest of the children to allow Ms. Rivers to relocate the children to Alabama and provided extensive reasons in its judgment.

*Written Notice of Proposed Relocation*

The trial court found that Ms. Rivers did not adhere to the notice requirements of relocation before moving the children to Alabama.

Generally, La. R.S. 9:355.4 and 9:355.5 require the parent who is proposing to relocate the child to notify the other parent of the proposed relocation, including written notice by registered or certified mail. La. R.S. 9:355.6 further provides:

> The court *may* consider a failure to provide notice of a proposed relocation of a child as:
> (1) A *factor* in making its determination regarding the relocation of a child.
> (2) A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.
> (3) Sufficient cause to order the person proposing relocation to pay reasonable expenses incurred by the person objecting to the relocation.

(Emphasis added). La. R.S. 9:355.6 allows the failure to provide notice to be a factor to be considered by the trial court.

The trial court considered the failure of Ms. Rivers to provide written notice of her intention to relocate the children as required by La. R.S. 9:355.5, including the conflicting testimony from Ms. Rivers and Mr. Ovide on this point. Ms. Rivers testified that she notified Mr. Ovide before the move, he did not object, and in fact helped her move. In contrast, Mr. Ovide testified that she did not notify him ahead of time and would frequently say things to the effect that she was leaving. He attributed it to her PTSD. La. R.S. 9:355.6 permits the failure to provide written notice to be a factor that the trial court consider. The trial court appropriately considered this as a factor. Ms. Rivers' argument on this point is without merit.

*Good Faith and Best Interest of the Children*

A person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. La. R.S. 9:355.10; *Hernandez v. Jenkins*, 12-2756 (La. 6/21/13), 122 So.3d 524, 528; *Curole v. Curole,* 02-1891 (La.10/15/02), 828 So.2d 1094, 1097. Therefore, Ms. Rivers bears the burden of proving that her request is in good faith and is in the best interest of the children.

The trial court found that Ms. Rivers proposed the move in good faith. We find no abuse of discretion in this finding. Next, we consider La. R.S. 9:355.14(A), which sets forth the twelve factors that the court must consider in determining whether the proposed relocation is in the best interest of the child. [1]

The twelve factors for the court to consider when deciding whether to grant a relocation are set forth in La. R.S. 9:355.14:

A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:

(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

---

[1] This statute was previously numbered as La. R.S. 9:355.12, but was amended and renumbered to La. R.S. 9:355.14 in 2012. The amendment is not applicable to the instant case. *See Hernandez*, 122 So.3d at 529 n.4.

The trial court considered all twelve factors in La. R.S. 9:355.14 involving relocation, and the best interest of the children test set forth in La. C.C. art. 134. There is no requirement that the court give preferential consideration to any factor. *Hernandez*, 122 So.3d at 528–29; *Gray v. Gray*, 11-548 (La. 7/1/11), 65 So.3d 1247, 1255. When the trial court has considered the factors listed under La. R.S. 9:355.14(A) in determining whether relocation is in the best interest of the child, the court's determination is reviewed for abuse of discretion. *Hernandez*, 122 So.3d at 529; *Gathen v. Gathen*, 66 So.3d at 9; *Curole*, 828 So.2d at 1096; *Duerson*, 379 So.3d at 753.

*Factors 1 and 2*

The trial court recognized that the parents resided together for a time and that during that time the children were consistently with both parents on an everyday basis. The trial court found that both parents established relationships with the children and that a relocation of the children to another state would not be in the children's best interest because their father would no longer have physical access to them on a daily basis. The trial court recognized that removing the children from Mr. Ovide would pose an issue for the children's emotional development in the coming years because they had established a relationship with their father that should be maintained. The trial court recognized Ms. Rivers' testimony that while the educational opportunities might be better in Alabama for the oldest child, this was not significantly outweighed by the educational opportunities that the children could receive in Jefferson Parish, Louisiana.

*Factor 3*

The trial court found that although both parties had the ability to maintain a relationship with the children, the trial court was not confident that Ms. Rivers would be willing to enforce custodial arrangements between the minor children and Mr. Ovide if she were allowed to relocate to Hoover. The trial court

concluded that Ms. Rivers' unwillingness to allow Mr. Ovide to communicate with the children after the relocation to Alabama was indicative of her intent to not co-parent with Mr. Ovide. Thus, this factor weighed against relocation of the children.

*Factor 4*

The trial court believed the children were too young for their views to be considered.

*Factors 5, 6, 7, 9, and 11*

The trial court found that factors five, six, seven, nine, and eleven did not favor one side or the other.

*Factors 8 and 10*

The trial court found that these factors weighed in favor of Mr. Ovide. The trial court recognized that Mr. Ovide financially supported the minor children and Ms. Rivers for several years. Further, Ms. Rivers testified that she was a veteran, and that her employment opportunities were better in Alabama. But she did not testify whether the job she obtained could be performed remotely or whether she had made efforts to get a job in the Greater New Orleans area. The trial court further found that she had been unemployed for a period of time during the relationship and subsequently. And although Ms. Rivers testified that she has the support of family members in Alabama, this should not be a substitute for the financial responsibility borne by Ms. Rivers and Ms. Ovide to care and provide for their minor children.

The trial court also found that because Mr. Ovide has an established tattoo business and financially provided for the family for several years, it was not feasible for him to relocate to Hoover. His clientele is located in the Greater New Orleans area.

*Factor 12*

The trial court found that the distance between the respective residences of the parties weighs in favor of denying relocation because Mr. Ovide would need to drive approximately six hours every other weekend to pick up the children. The trial court was also mindful that the distance may pose an even larger issue in the future as the children become involved in extracurricular activities. The trial court concluded that it is in the children's best interest to continue to maintain, establish, and foster a strong and loving relationship with both parents and both sides of the family.

After a thorough review of the record, we cannot say that the trial court abused its discretion in determining that relocation was not in the best interest of the children. While a different conclusion could have been reached based on the facts presented, the consideration on appeal is whether the trial court abused its great discretion in arriving at its conclusion. The trial court sitting as the trier of fact is in the best position to evaluate the demeanor of the witnesses. *Oliva v. Jones*, 22-385 (La. App. 5 Cir. 3/29/23), 360 So.3d 573, 578. A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. *Gathen*, 66 So.3d at 9; *Duerson*, 379 So.3d at 753.

For these reasons, the trial court's judgment is affirmed.

**AFFIRMED**

GREGORY OVIDE

VERSUS

ERICA RIVERS

NO. 24-CA-140

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**MOLAISON J., CONCURS WITH REASONS**

I reluctantly agree with the majority's opinion based on the required standard of review. I write separately, however, to emphasize factors that I believe weighed in favor of granting Ms. Rivers' request to relocate with her children.

Evidence in the record suggests that Ms. Rivers, a U.S. Army veteran who sustained disabling injuries during her service, was able to significantly maximize her employment opportunities upon relocating to Alabama. The record further demonstrates that the parties' three children also benefitted from a highly rated school system and the support of Ms. Rivers' extended family. By contrast, Ms. Rivers testified that her life in Louisiana was of scarce employment, with little to no assistance from Mr. Ovide in daily child care.

On the issue of whether Mr. Ovide was actually and actively involved in raising the children, I note that he could not name any of their doctors and was unclear about the details of taking them to school. His account of seeing the children every Saturday differed from testimony that he saw them only every *other* Saturday for a minimal amount of time.

While Mr. Ovide recognized that his children may have enjoyed a better life in Alabama, he also made clear that he would not be inconvenienced by having to drive any distance from the New Orleans area to visit them. This, even

though his self-employed status, would allow him the flexibility to do so if he chose.

I cannot disagree with the trial court's assessment of witness credibility based on a cold record nor with the majority's conclusion using the abuse of discretion standard. However, I find that the evidence presented justified allowing Ms. Rivers to relocate with her children, which was at least equal in weight to the evidence cited by the trial court to deny relocation.

I question whether the best interests of the children, in this case, are indeed being served by forcing their mother to give up meaningful employment, her family's support, and the optimism of a fresh start in life simply so that Mr. Ovide can be a dad for a few hours - every other weekend.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 16, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-CA-140

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
NO ATTORNEY(S) WERE ENOTIFIED

### MAILED
J. CRAIG DIAMOND (APPELLANT)
ATTORNEY AT LAW
900 CAMP STREET
SUITE #4C5
NEW ORLEANS, LA 70130

MARCUS A. GREEN (APPELLEE)
ATTORNEY AT LAW
931 WESTWOOD DRIVE
SUITE B
MARRERO, LA 70072